**Edward Charles PICKENS, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Corrections, Appellee.**

No. 82–1836.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 2, 1983.

Decided Aug. 12, 1983.

Ray Hartenstein, Little Rock, Ark., for appellant.

Steve Clark, Atty. Gen. by C.R. McNair, III, Victra L. Fewell, Asst. Attys. Gen., Little Rock, Ark., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

LAY, Chief Judge.

In 1975 Edward Charles Pickens was charged by information in Arkansas state court with murder in the first degree pursuant to Ark.Stat.Ann. § 41–2205 (current version at Ark.Stat.Ann. § 41–1502 (1977)). Several weeks prior to trial the State amended the information to charge Pickens with capital felony murder pursuant to Ark. Stat.Ann. § 41–4702 (current version at Ark.Stat.Ann. § 41–1501 (1977)), which carries the possibility of a death sentence. Because of the death penalty possibility, Pickens was afforded a bifurcated jury trial. See Ark.Stat.Ann. § 41–1301 (1977). The first phase of the trial was for the determination of guilt or innocence and the second phase was for the determination of a penalty. After a two-day trial the jury found Pickens guilty of the capital felony murder of Wesley Noble and sentenced him to death by electrocution. Pickens' motion for a new trial was denied and his conviction and sentence were affirmed by the Arkan-

sas Supreme Court. *Pickens v. State,* 261 Ark. 756, 551 S.W.2d 212 (1977) (en banc), *cert. denied,* 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978).[1]

Pickens filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1976) in federal district court on May 14, 1981, raising twenty separate points as grounds for relief. The district court, the Honorable Henry Woods presiding, held an evidentiary hearing and issued an opinion denying the petition in its entirety. *Pickens v. Lockhart,* 542 F.Supp. 585 (E.D.Ark. 1982). This appeal followed.

Pickens' main contention on appeal relates to his claim that he did not receive effective assistance of counsel under the sixth and fourteenth amendments of the United States Constitution in *either* phase of his bifurcated capital felony murder trial. Pickens also claims on appeal that (1) the case should be remanded because the district court refused to consider his claim that jurors "death-qualified" under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), were more likely to convict;[2] (2) improper jury instruc-

---

1. Pickens thereafter filed a pro se petition seeking a copy of his trial transcript. The petition was denied because it was not attached to a petition for postconviction relief. *Pickens v. State,* 266 Ark. 486, 586 S.W.2d 1 (1979). On September 2, 1980, Pickens sought postconviction relief under Arkansas Criminal Procedure Rule 37. He alleged, *inter alia,* that he had received ineffective assistance of counsel at both the trial and appellate level, enumerating nine specific failings. The Arkansas Supreme Court denied his petition in an unpublished opinion, finding that none of the allegations of ineffective assistance of counsel justified vacating the sentence. *Pickens v. State,* No. CR 76–186 (Ark. Nov. 3, 1980) (per curiam), *cert. denied,* 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981).

2. We summarily reject such a claim. Pickens asserts that the district court erroneously found that no juror had been excused for *Witherspoon* reasons and requests a remand for an evidentiary hearing. *See Grigsby v. Mabry,* 637 F.2d 525, 527, 529 (8th Cir.1980). *Grigsby* held that the defendant was at least entitled to an evidentiary hearing on his alleged constitutional claim that the determination of his guilt by a death-qualified jury deprived him of a trial by a fair and impartial jury.

The district court concluded that *Grigsby* did not mandate an evidentiary hearing in this case. 542 F.Supp. at 606. Pickens did not raise the prone-to-convict issue at trial or in any stage of proceedings in the Arkansas courts. Unlike Grigsby, Pickens made no efforts to introduce evidence on this issue and did not object to the composition of the jury. *See Collins v. Lockhart,* 545 F.Supp. 83, 89–90 (E.D.Ark.1982) (no objection to composition of jury waives death-qualified argument), *rev'd on other grounds,* 707 F.2d 341 (8th Cir.1983). The district court also concluded that because Pickens did not raise the issue until he filed a habeas petition the issue was procedurally barred by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The district court observed that even if Pickens could show "cause" for the default, he could not meet the showing of prejudice required by *Sykes* and *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982), because the evidence of Pickens' guilt was overwhelming. 542 F.Supp. at 605. We agree with the district court that Pickens has not shown any prejudice from the composition of his jury and that *Grigsby* does not require a remand for a hearing.

tions fundamentally infected the fairness of both phases of his trial; and (3) Arkansas capital-sentencing procedures impermissibly penalized his constitutional rights to plead not guilty and have a jury trial.[3] We find that Pickens' counsel failed to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances in the *penalty* phase of the trial, thereby violating the sixth and fourteenth amendments of the United States Constitution; we vacate the judgment of the district court and remand with directions.

## I. FACTS.

On the afternoon of October 20, 1975, Pickens, Antonio Clark, and Sherwood Gooch entered a rural grocery store in Casscoe, Arkansas with a sawed-off shotgun and a .22 caliber pistol. They robbed the owner, the clerk, and seven customers in the store and two of the robbers raped the female clerk. They then made their victims lie face down on the floor and shot seven of them in the back of the head with the .22 caliber pistol. Several of the victims were shot a second time after the pistol was reloaded. Two of the victims, including seventy-six year old Wesley Noble, died. Noble was one of those shot a second time. The store owner later implicated Clark and Pickens in the shootings and absolved Gooch from any of the firing. Clark and Pickens were both dark complexioned black men and Gooch was a light-skinned, Spanish-appearing person. The store owner testified that the dark ones did the shooting and the light complexioned man did not. Another witness testified that Pickens had possession of the shotgun while the robbery was in progress. The female clerk testified that Pickens had possession of the .22 pistol, but she did not know whether he fired the shots.

Later the same evening Memphis, Tennessee police, acting on a prostitute's tip, chased and stopped a stolen vehicle carrying Clark, Gooch, and Pickens. The occupants of the car fled, but Gooch and Pickens were quickly apprehended. The car contained items taken in the robbery and Pickens was found wearing the rape victim's wedding ring. Pickens was interrogated by Memphis and Arkansas police officers and confessed to participating in the armed robbery of the Casscoe grocery store. He identified Antonio Clark as the killer and denied firing the fatal shots.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

The sixth amendment of the United States Constitution has been interpreted by the Supreme Court to guarantee to every criminal defendant the right to effective assistance of counsel. *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963); *cf. Powell v. Alabama,* 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932) (capital case). The failure to provide effective assistance is a fundamental constitutional error that undermines the entire adversary process. *See Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). Nevertheless, a presumption exists that defense counsel has rendered effective assistance and a disappointed criminal defendant has a heavy burden to establish otherwise. *See Harris v. Housewright,* 697 F.2d 202, 206 (8th Cir. 1982); *Eldridge v. Atkins,* 665 F.2d 228, 231–32 (8th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982); *McQueen v. Swenson,* 498 F.2d 207, 216 (8th Cir.1974).

Our cases have established that for a habeas corpus petitioner to prevail on an ineffective assistance of counsel claim he or she must satisfy a two-part test. First,

3. Pickens' claim is made under *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), and is without merit. Pickens exercised his right of trial by jury and did not plead guilty. Even assuming the Arkansas statute can be said to be similar to the defec-

tive statute in *Jackson,* a point vigorously disputed here, Pickens was not deterred in exercising his right of trial by a jury and therefore has no standing to raise a *Jackson* claim. *See id.* at 581–82, 88 S.Ct. at 1216–17.

the petitioner must show that the attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances. Second, the petitioner must show that he or she was prejudiced by counsel's ineffectiveness. *E.g., Harris v. Housewright,* 697 F.2d at 204; *Holtan v. Parratt,* 683 F.2d 1163, 1167 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1231, 75 L.Ed.2d 466 (1983); *United States v. Easter,* 539 F.2d 663, 666 (8th Cir.1976); *see also Reynolds v. Mabry,* 574 F.2d 978, 981 (8th Cir.1978) (question of prejudice intertwined with question of breach of duty); *cf. United States v. Morrison,* 449 U.S. 361, 364–67, 101 S.Ct. 665, 667–69, 66 L.Ed.2d 564 (1981) (absent showing of some prejudice, sixth amendment violation does not justify dismissal of indictment or interference with criminal proceedings against defendant). We have characterized the first step of this test in terms of whether the attorney has failed to perform a duty owed to the client. *See Eldridge v. Atkins,* 665 F.2d at 232.[4]

Shortly after Pickens was arrested, Judge W.M. Lee appointed Willis Plant to represent him. At the time of his appointment, Plant was in his mid-sixties and in poor health. His main source of income was from his Army retirement pension, rather than from his law practice. Although Judge Lee testified at the habeas hearing that Plant handled "a lot of criminal cases," another witness, attorney Robert Morehead, characterized Plant's practice as mostly civil, such as land leases for farmers. Prior to the evidentiary hearing held in the federal district court, Plant suffered a severe stroke and became mentally and physically disabled.

### A. Guilt phase of the trial.

1. *Failure to interview law-enforcement officers who conducted Pickens' stop, arrest, search, and interrogation.*

Pickens initially contends that Plant completely failed to prepare for trial. We have long recognized that courtroom experience is no substitute for thorough pretrial investigation and preparation in every case. *Wolfs v. Britton,* 509 F.2d 304, 309 (8th Cir.1975) ("effective assistance refers not only to forensic skills but to painstaking investigation in preparation for trial"); *see also Eldridge v. Atkins,* 665 F.2d at 232 (petitioner materially prejudiced by counsel's failure to investigate and present defense). The American Bar Association has observed:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

1 ABA Standards for Criminal Justice, Standard 4–4.1 (2d ed. 1980).

Pickens contends that Plant's pretrial investigation did not adhere to this standard and that he was prejudiced by Plant's failure to investigate.

Pickens argues that the circumstances surrounding his stop, arrest, and confession in Memphis were such that the events should have been investigated by his coun-

---

4. Pickens would have us impose a higher standard of reasonable competence on his attorney solely because the death penalty is qualitatively different from a term of imprisonment and should be subject to a more reliable determination. *See Beck v. Alabama,* 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980); *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976) (opinion of Stewart, Powell, and Stevens, JJ.). We apply the same standard in capital and noncapital cases, recognizing however, that the seriousness of the offense is a factor to be considered in the overall assessment of counsel's performance. *See Stanley v. Zant,* 697 F.2d 955, 962–63 (11th Cir.1983); *Washington v. Watkins,* 655 F.2d 1346, 1356–57 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

sel. The stop of the car in which Pickens was riding was based on the partially inaccurate tip of a prostitute with whom Clark and Gooch had just had an argument. Further, Pickens testified that he confessed to participation in the robbery only after he asked one of the Memphis police officers for a lawyer and being told that he "didn't need a lawyer, but ... needed Jesus Christ." He testified that the same officer also told him that no lawyer would take his case and that it would cost more than $50,-000 to get a lawyer.

It is essentially undisputed that Plant spoke with none of the arresting or interrogating officers. He did no independent investigation of the circumstances of the arrest, but did receive a response to a motion for a bill of particulars. The response contained lists of the State's witnesses, summaries of their testimony, and a list of all physical evidence the State planned to introduce. Further, Plant did not investigate the veracity of Pickens' statement that he had requested a lawyer. Plant did not question in the pretrial hearing whether Pickens had voluntarily and intelligently waived his *Miranda* rights.[5] The Arkansas Supreme Court refused to consider the *Miranda* waiver issue because it had not been raised below. *Pickens v. State,* 551 S.W.2d at 214. Nevertheless, the prosecution initiated a *Denno* hearing[6] immediately prior to trial about the voluntariness of Pickens' confession, waiver of rights, and stop of the car. Police officers testified that Pickens had knowingly waived his rights when he signed a waiver form and that he voluntarily confessed. They all testified that they had not heard anyone tell Pickens that he did not need a lawyer. One officer testified on cross-examination that Pickens never requested a lawyer, although that officer was not present throughout the entire interrogation. The trial court ruled that Pickens' statements were made voluntarily.

■ Counsel's failure to investigate the circumstances surrounding an arrest and search are not always grounds for an inef-

fective assistance claim. *See Reynolds v. Mabry,* 574 F.2d at 980–81 (affirming denial of habeas relief because the failure to investigate not a breach of duty when no reasonable grounds to exclude evidence); *cf. Wallace v. Lockhart,* 701 F.2d 719, 727 (8th Cir.1983) (no support in the record for alleged failure to investigate); *Walker v. Solem,* 687 F.2d 1235, 1238–39 (8th Cir.1982) (affirming denial of ineffective assistance claim because attorney may at times reasonably choose to rely on other sources of information rather than independently interview witnesses). In the instant case, although there was at least a possibility that some of this evidence could have been excluded, we cannot say that Plant's failure to investigate actually prejudiced Pickens. Pickens received a *Denno* hearing and Plant was apprised of the evidence in the State's possession by means of the bill of particulars. Even if we might assume without deciding that Plant's failure to investigate properly the circumstances surrounding the arrest violated Pickens' right to effective counsel, Pickens has not shown that the ineffective assistance worked to his "*actual and substantial disadvantage*" in the guilt phase of the trial. *Washington v. Strickland,* 693 F.2d 1243, 1258–60 (5th Cir.1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983) (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982)); *see McQueen v. Swenson,* 498 F.2d at 218–19. Our review of the evidence shows that Pickens' involvement in the crime was overwhelming; further, he testified at trial about his participation in the robbery.

*2. Failure to object to trial court's choice of venue.*

■ Plant filed no pretrial motions of his own, but "adopted" the change of venue motion filed by the attorney for codefendant Gooch. The trial court granted the change of venue motion and moved Pickens' trial to an immediately adjacent county. It

---

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**6.** *Jackson v. Denno,* 378 U.S. 368, 391–94, 84 S.Ct. 1774, 1788–90, 12 L.Ed.2d 908 (1964).

is undisputed that this case was widely publicized and emotionally charged. There was testimony at the evidentiary hearing that citizens living in the county where Pickens was tried had been thoroughly exposed to adverse pretrial publicity. Gooch and Clark secured venue changes to counties not contiguous to the one where the crime occurred. Yet, Plant made no objection to the trial court's choice of venue and introduced no evidence of adverse publicity. The lack of objection barred Pickens from raising the issue on direct appeal. *Pickens v. State,* 551 S.W.2d at 213. Because of the lack of evidence of adverse pretrial publicity the district court refused to consider Pickens' claim that he was denied a fair trial due to prejudicial publicity. *Pickens v. Lockhart,* 542 F.Supp. at 610.

The State argues that pursuant to the Arkansas Constitution a change of venue may be made only to another county within the same judicial district. Ark. Const. art. II, § 10. The judicial district where the murders occurred consisted of Arkansas, Monroe, Prairie, and Lonoke Counties. The murders occurred in Arkansas County; Clark was tried in Lonoke County; Gooch's trial was set in the Northern District of Prairie County; Pickens was tried in the Southern District of Prairie County. The only other forum available was in Monroe County, which was closer to the scene of the murders than was Prairie County. It appears, therefore, that Pickens was tried in the least prejudicial forum available. An objection by Plant may have been futile.

Pickens argues that the Arkansas Supreme Court would have been receptive to a timely objection to improper venue. *See Ruiz v. State,* 265 Ark. 875, 886–88, 582 S.W.2d 915, 919–21 (1979) (en banc) (conviction for capital murder and sentence to death reversed because trial court denied motion for change of venue); *Swindler v. State,* 264 Ark. 107, 110–13, 569 S.W.2d 120, 122–23 (1978) (en banc) (conviction for capital felony murder reversed because trial court denied motion for change of venue). However, these cases are easily distinguish-

able. The trial courts in *Ruiz* and *Swindler* refused to grant any venue change whatsoever. In Pickens' case, the trial court recognized the potential prejudice from pretrial publicity and moved the venue accordingly. We conclude that Pickens was not actually prejudiced by Plant's failure to move for another change of venue.

*3. Failure to object to State's amendment of the information.*

Pickens argues that the State's amendment of the charge on the information from first degree murder to capital felony murder was improper under Arkansas law. *See* Ark.Stat.Ann. § 43–1024 (1977) ("But no indictment shall be amended, nor bill of particulars filed, so as to change the nature of the crime charged or the degree of the crime charged."). The State contends that the authorities Pickens cites are inapposite when the amendment is made weeks prior to trial, *see Abernathy v. State,* 278 Ark. 250, 644 S.W.2d 590, 591–92 (1983) (no prejudice to defendant by filing new information), and that the amended information did not substantially affect the degree of the alleged crime. We agree. It is clear that the State may legally dismiss an information and file a new one. *Abernathy v. State,* 644 S.W.2d at 591. Pickens has not shown any prejudice from the amendment. The original information and the amended information were virtually identical but for the statutory designation of the offense. The original information specifically designated first degree murder as a capital felony, and one of the prosecutors testified that the State regarded this as a capital case from the first. The "nature of the crime charged" was not affected by the amendment and Plant's failure to object to the amendment did not materially prejudice Pickens.

*4. Failure to investigate and apprise the jury of Clark's extensive and violent criminal record.*

As the district court noted, Plant's only theory of defense against the capital felony murder charge was to convince the jury that Antonio Clark, not Pickens, had

actually committed the shootings. 542 F.Supp. at 594.[7] Pickens does not fault that trial strategy. He complains, rather, that Plant neglected to introduce the most convincing evidence of Pickens' noninvolvement, that of Antonio Clark's criminal background. Pickens had one previous conviction for unarmed robbery in Michigan and was about twenty-one years old at the time of the Arkansas crime; Clark was a reputed "drug pusher" and is presently serving a life sentence for another murder conviction in Michigan. Of the three robbers, Clark had the most extensive criminal background and was allegedly the one most likely to dominate the actions of the others. Plant did not attempt to investigate Clark's reputation for violence nor did he introduce Clark's prior criminal record into evidence. He contacted no one in Clark and Pickens' old neighborhood in Detroit about their respective reputations for violence. Evidence of Clark's violent criminal past may have substantiated Pickens' own testimony that he had not pulled the trigger.

The State contends that Plant brought Clark's background to the jury's attention in his closing argument and that it was unnecessary for him to put on evidentiary support. We disagree. Pickens had only one plausible line of defense—that he was not the "triggerman"—and Plant did not investigate all aspects of that defense. The Fifth Circuit recently observed that when counsel can discern only one plausible line of defense "effective counsel is obliged to conduct a reasonably substantial investigation into that line before proceeding to trial. The failure to perform such an investigation is a clear example of a breach of the duty to investigate." *Washington v. Strickland,* 693 F.2d at 1252; *cf. United States v. Easter,* 539 F.2d at 666 (fundamental that to afford criminal defendant a fair trial, his counsel must assert "that which may be his only defense").

Our analysis does not end with a finding of a breach of duty, however. Once again

we must consider whether Pickens was actually and substantially prejudiced in the guilt phase of the trial by the conduct of his counsel. We conclude that in the guilt phase of Pickens' trial, his defense of not being a triggerman was not prejudiced by Plant's failure to produce evidence of Clark's background. The State introduced evidence from which the jury could conclude that Pickens was one of the triggermen. Further, to establish the nontriggerman defense, Pickens must have established not only that he did not pull the trigger, but that he did not "aid" in committing the homicide act. Ark.Stat.Ann. § 41–1501(2) (1977). He was identified by some of the surviving victims, he admitted participation in the robbery, he admitted handling the .22 caliber gun, and he admitted taking the victims into the back room of the store. One of Pickens' expert witnesses at the habeas hearing testified that there was no question Pickens was factually involved in the case. *See Pickens,* 542 F.Supp. at 597. Although evidence about Clark's background may have been beneficial, we cannot say that its absence substantially disadvantaged Pickens in presenting his defense in the guilt phase of the trial. *See Washington v. Strickland,* 693 F.2d at 1258 (citing *United States v. Frady,* 456 U.S. at 170, 102 S.Ct. at 1595).

5. *Failure to object to the trial court's erroneous instruction on principals and accessories.*

In the guilt-innocence phase of the trial the trial court instructed the jury:

> Members of the jury, you are instructed that in all criminal cases the distinction between accessories and principals has been abolished and that accessories and principals are subject to the same punishment. The law declares an accessory to be any person who stands by, aids, abets or assists, or who not being present, aiding, abetting or assisting, hath advised and encouraged the perpetration of the

---

7. *See* Ark.Stat.Ann. § 41–1501(2) (1977), which provides: "(2) It is an affirmative defense to any prosecution under subsection (1)(a) for an offense in which defendant was not the only

participant that the defendant did not commit the homicide act or in any way solicit, command, induce, procure, counsel, or aid its commission."

crime. Therefore, if you find that this defendant aided, abetted or assisted in the perpetration of the crime you shall assess his punishment as if he were a principal.

Jury instruction 9A.

It is not disputed by the State that this instruction was a misstatement of applicable Arkansas law. The Arkansas Supreme Court has found an almost identical instruction to constitute prejudicial error. In *Brewer v. State*, 271 Ark. 254, 608 S.W.2d 363 (1980), the defendant objected to the addition of a sentence to a standard instruction on accomplice liability. The sentence stated: "The punishment for an accomplice is the same as that of a principal." The supreme court found the added sentence to be prejudicial error, stating:

> [I]t is a misstatement of the law as it says the punishment for an accomplice is the same as that of a principal when in fact the law states that an accomplice may be punished the same as a principal. Also, he could receive a sentence less than the principal.

*Id.* at 264, 608 S.W.2d at 369.

The court reversed Brewer's capital felony murder conviction and remanded for a new trial. Pickens contends that this instruction contradicts his claim of not being the triggerman and thus weakens his defense to the capital murder charge.[8]

 Plant did not object to the giving of this instruction and the Arkansas courts never considered the error in the instruction, either on direct appeal or in rule 37 proceedings.[9] Pickens contends that the failure to object deprived him of a fair determination of factual issues by the jury and of corrective action on appeal. The State contends that it was not unreasonable

at the time of Pickens' trial for an attorney not to recognize this instruction as error. The State further argues that even if it was error, Pickens suffered no prejudice in the guilt phase of the trial, because the erroneous statement in the instruction related to the *punishment* of accessories and principals and did not incorrectly state the law of accessory liability for a crime. *See* Ark. Stat.Ann. §§ 41–301 to –303 (1977) (criminal liability for the conduct of another). We respectfully disagree. The Arkansas Supreme Court *reversed* a conviction for use of the same instruction; the instruction at its best ambiguously equates guilt with "punishment." However, the State contends that any confusion or error in instruction 9A relating to Pickens' defense was corrected by instruction 10A, which provided that Pickens had asserted the affirmative defense "that the defendant was not the only participant to the offense and that he did not participate in the actual commission of the homicide nor did he in any way solicit, command, induce, procure, counsel or aid its commission." The jury was instructed that if the defendant "proved his affirmative defense you must acquit the defendant of capital felony murder." Jury instruction 10A. We agree that this instruction, although inconsistent with instruction 9A, does detract from the prejudice flowing from instruction 9A in the guilt-innocence phase of Pickens' trial. However, more controlling is the overwhelming evidence of Pickens' participation as corroborated by his own confession in aiding and acting as an accessory to the heinous crime.

Under the circumstances, we find no prejudice to Pickens in the determination of his guilt from his counsel's alleged misconduct. Whether or not Pickens actually pulled the

---

**8.** *See* Ark.Stat.Ann. § 41–1501(2) (1977), quoted in note 7 *supra*.

**9.** There exists no exhaustion problem under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), or otherwise because: (1) the State has not raised the exhaustion issue in the district court or in this court; and (2) under Arkansas procedures it would be futile to require Pickens to raise the issue in the state courts. The Arkansas state courts will not

entertain a successive petition for postconviction relief, particularly when no contemporaneous objection was made at trial. *Williams v. State,* 273 Ark. 315, 316, 619 S.W.2d 628, 629 (1981); *Pickens v. State,* No. CR 76–186, slip op. at 6 (grounds not raised in original petition may not be basis for subsequent petition); *see Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982).

trigger, it is difficult to believe that any rational jury could have found that he did not serve as an accessory in the homicide. We agree with the district court that Pickens is not entitled to have his judgment of conviction set aside.

B. *Penalty phase of the trial—the death penalty.*

1. *Failure to present a case in mitigation.*

The district court observed that: "The real issue in this case is whether [Pickens] received effective assistance of counsel in the sentencing phase of the case." 542 F.Supp. at 595. After the jury had reached a verdict of guilty in the guilt-innocence phase of the trial, the trial judge stated: "We will now have to take some more proof on aggravating and mitigating circumstances and then you will have to arrive at another verdict." [10] The State called two

witnesses. Both testified that they had been shot during the robbery. They did not identify who shot them. Plant did not cross-examine them. The State then drew the jury's attention to Pickens' prior conviction and sentence in Michigan for unarmed robbery, inaccurately characterizing it as a conviction for "armed robbery." Plant did not object to the prosecutor's misstatement. At the close of the prosecution's case, Plant stated: "I have nothing to present." Plant put on no evidence in the sentencing phase, although he may have made an argument in mitigation without supporting facts in the record.[11] The judge read the verdict forms to the jury. They found the presence of three aggravating circumstances: (1) that the defendant had been previously convicted of a felony involving·use or threat of violence; (2) that the defendant knowingly created a great risk of death to persons in addition to the victim; and (3) that the

---

**10.** Arkansas adopted new capital-sentencing procedures that were in effect at the time of Pickens' trial, following the Supreme Court's decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *See* Ark. Stat.Ann. §§ 41–1301 to –1351 (1977). Section 41–1301(4) specifically provides that additional evidence may be presented to the jury in the sentencing phase that relates to enumerated aggravating circumstances or that relates to "any mitigating circumstances."

**11.** Because the court reporter's tape recording of the voir dire, opening statements, and closing arguments was destroyed in a fire, the record had to be reconstructed for appeal in the state court. The reconstructed record does not reflect whether either counsel made closing arguments. Prosecutor Jack Lassiter testified at the habeas hearing that he made a closing argument for the State, but he could not remember whether Plant had made an argument. The trial judge, W.M. Lee, testified that he could not remember whether Plant argued. Prosecutor James Bayne testified that he remembered Plant arguing to the jury that the death penalty would be their responsibility. Prosecutor Gary Isbell testified in his deposition that he recalled Plant making an argument in mitigation and introducing Pickens' family. *See Pickens,* 542 F.Supp. at 599–600.

Pickens additionally contends in this habeas proceeding that Plant failed to identify material mistakes and omissions in the reconstructed record and that the lack of a complete record denied him the right to a meaningful appellate

review. Pickens asserts that there may have been violations of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) in the course of the voir dire and that the prosecutor may have made improper remarks in the voir dire and closing argument. Pickens also contends that if his counsel had objected to the reconstructed record he would have at least been entitled to a hearing. *Butler v. State,* 261 Ark. 369, 549 S.W.2d 65, 68 (1977) (trial tapes destroyed in apparently the same fire; hearing conducted to settle the record). The district court considered this contention at length, and concluded, in agreement with the Arkansas Supreme Court, that Pickens had shown no ruling by the trial court in the omitted portions of the record that prejudiced his case. 542 F.Supp. at 601–04.

In *Mitchell v. Wyrick,* 698 F.2d 940 (8th Cir. 1983), this court recently discussed the standard for evaluating when the lack of a complete record amounts to a violation of the right to an adequate record for review and concluded no violation had been shown. The court noted that absence of a perfect transcript is not necessarily a denial of due process, 698 F.2d at 941, and that prejudice or harm must be asserted. *Id.* at 942. Pickens does not contend that the reconstructed record omits testimony of any of the trial witnesses. We also note that Pickens' counsel did make a motion for a new trial when he learned the tapes were destroyed and did make a motion for a hearing to settle the record. We cannot say that Plant's failure to do more prejudiced Pickens in presenting his appeal.

capital felony was committed for the purpose of avoiding lawful arrest. The jury found no mitigating circumstances, and sentenced Pickens to death by electrocution.

Pickens' witnesses at the habeas evidentiary hearing directed most of their testimony to Plant's failure to present a case in mitigation. Of the three state prosecutors involved in the trial, two testified that Plant's failure to investigate and present a case in mitigation constituted a breach of the duty of effective representation. Prosecutor Lassiter testified that Plant's failure to talk to Pickens' mother and failure to contact other family members constituted a breach of duty. He further testified that an attorney could not make a tactical decision with regard as to what to present at sentencing without investigating the underlying facts, and that there would be no tactical reason for failing to make that investigation. Prosecutor Isbell testified in his deposition that Plant did not perform up to minimal standards of competency in representation of his client at sentencing.

Three other attorneys, Millard Farmer, Tom Carpenter, and Robert Morehead, each with experience in the trying of capital cases, testified at the habeas hearing that Plant's assistance fell below minimum standards of competence. Morehead, an Arkansas attorney acquainted with Plant, also testified that Plant had told him that "in recent years he had not kept up with some of the finer points as it relates to the penal code and the criminal law." Judge W.M. Lee, testifying for the State, stated that Plant "was not a book lawyer" and that he was not very good at looking up the law.

Pickens contends that Plant's failure to investigate and present a case in mitigation breached an essential duty owed to Pickens and substantially prejudiced him in the penalty phase of the case. This court has recognized that effective representation extends to the sentencing phase. In *Wolfs v. Britton*, 509 F.2d at 311, we found that a defendant was prejudiced by his counsel's lack of time to develop background information in mitigation. *Wolfs* relied on commentary to the ABA standard relating to defense counsel's duty to investigate:

> The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. This cannot effectively be done on the basis of broad general emotional appeals or on the strength of statements made to the lawyer by the defendant. Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense itself. Investigation is essential to fulfillment of these functions. Such information may lead the prosecutor to defer or abandon prosecution and will be relevant at trial and at sentencing.

1 ABA Standards for Criminal Justice, Standard 4–4.1 commentary, at 4–55 (2d ed. 1980) (earlier version quoted in *Wolfs*, 509 F.2d at 311).

Pickens contends that Plant should have investigated and presented evidence about his background in Louisiana and Detroit, Michigan. It is asserted Plant should have pointed out that Pickens cooperated with the authorities in the apprehension of Antonio Clark. Plant should have contacted Pickens' mother in Detroit about Pickens' background and not refused her repeated offers to help.

Pickens' mother did testify extensively at the habeas proceeding in federal district court about Pickens' background and his cooperation with the authorities. Her testimony is summarized by the district court, 542 F.Supp. at 595–96. Pickens lived in Louisiana with his father until he was fifteen and then moved to Detroit to live with his mother. She testified that Pickens, as a youth, was physically abused by his father and tried to run away several times. There is no dispute that evidence of a turbulent family background, beatings by a harsh father, and emotional instability may be relevant in mitigation. The Supreme Court has reversed the imposition of a death penalty

when such evidence was introduced, but the sentencing judge refused to consider it. *Eddings v. Oklahoma,* 455 U.S. 104, 115, 102 S.Ct. 869, 876, 71 L.Ed.2d 1 (1982).

Millard Farmer, an Atlanta attorney with considerable experience in the trial and appeal of capital cases, also testified at the evidentiary hearing. Farmer testified that he had conducted a partial investigation of the type that Pickens' trial counsel should have conducted to find mitigating evidence. Farmer presented affidavits from several people in Detroit who knew Pickens and would have been willing to testify concerning mitigating background. Farmer's law partner conducted an investigation in Louisiana and obtained affidavits from other members of the Pickens' family, a juvenile judge, and a welfare case worker. 542 F.Supp. at 596–97. Farmer was also critical of Plant's failure to use a psychiatrist or psychologist to examine Pickens and testify about his rehabilitation prospects. *See Eddings v. Oklahoma,* 455 U.S. at 107–08, 102 S.Ct. at 872–73.

The district court considered this and other testimony and found that counsel's failure to introduce *any* mitigating evidence was not error because of the potential adverse effect such evidence might have on the jury. The district court found the jury may not have viewed favorably Pickens' prior difficulties with the law both as a juvenile and as an adult. The court found that the jury may not have been sympathetic to Pickens' troubled family background. In short, the district court concluded that it was part of Plant's trial strategy to put on no evidence at all rather than introduce this type of potentially damaging mitigating evidence. "Apparently, the trial tactic of Mr. Plant was not to open up the full panorama of Pickens' background by the introduction of evidence but simply to argue any favorable aspects of his background in mitigation." 542 F.Supp. at 599.

We cannot view the record to support such a conclusion. Given the severity of the potential sentence and the reality that the life of Plant's client was at stake, we find that it was incumbent upon Pickens' counsel to offer mitigating proof. There exists no indication in the record that Plant made any tactical decision; it appears much more likely that he abdicated all responsibility for defending his client in the sentencing phase. We cannot view such an abdication as meeting the level of effective assistance required under the sixth amendment.

The error of the district court in evaluating the strategy of Pickens' counsel is that it fails to consider that it is only *after* a full investigation of *all* the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client's case. In the present case, it is undisputed counsel failed to make *any* investigation whatsoever. It is true counsel may choose not to investigate all lines of defense and may concentrate, for reasons of sound strategy, on another possible line of defense. *See Washington v. Strickland,* 693 F.2d at 1254–55. We would not fault such a strategy if it were a reasoned choice based on sound assumptions. That is not the situation here. Plant did no investigation into any possible mitigating evidence. He was left with no case to present. A total abdication of duty should never be viewed as permissible trial strategy. *Id.* at 1252–53; *see also Stanley v. Zant,* 697 F.2d at 966 ("a showing that counsel's decision to forego evidence was *not* based on a reasoned tactical judgment will give rise to an ineffective assistance claim") (emphasis original); *Brubaker v. Dickson,* 310 F.2d 30, 39 (9th Cir. 1962) ("appellant's defense was withheld . . . in default of knowledge that reasonable inquiry would have produced, and hence in default of any judgment at all").

It is sheer speculation that character witnesses in mitigation would do more harm than good, 542 F.Supp. at 598–99, and that Pickens was not prejudiced by the omission. Here, counsel's default deprived Pickens of the possibility of bringing out even a single mitigating factor. Mitigating evidence clearly would have been admissible. 542 F.Supp. at 598; Ark.Stat.Ann. § 41–1301(4) (1977). The jury would have considered it and possibly been influenced by it. *See*

*Thomas v. Wyrick,* 535 F.2d at 416–17. We find that Pickens was actually and substantially prejudiced in the penalty phase of the case.

2. *Failure to object to jury instruction 9A.*

█ Pickens additionally urges that he was prejudiced in the penalty phase by erroneous jury instruction 9A, which provided in part that an accessory shall be punished "as if he were a principal." Pickens contends that the instruction was not only a misstatement of Arkansas law, but that it violated his eighth and fourteenth amendment rights to have the sentencer consider all the mitigating circumstances in the case. *See Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion). Pickens urges that instruction 9A had the effect of equating punishment for all participants in the crime, and thus undercut the limited-participation mitigating circumstance that the jury was to consider during its sentencing deliberation. *See* Ark.Stat.Ann. § 41–1304(5) (1977) (The jury may consider in mitigation that "the capital murder was committed by another person and the defendant was an accomplice and his participation relatively minor."). As previously noted, Plant did not object to the instruction and the erroneous instruction has never been presented by him to the Arkansas courts.

Pickens' failure to exhaust his state remedies does not preclude him from raising this claim in federal court, *see* note 9 *supra.* He must still demonstrate "cause" (as to failure to object) and "prejudice" for this court to consider the merits. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) and *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). In *Engle,* the Court reaffirmed its holding in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and held that "any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief." 456 U.S. at 129, 102 S.Ct. at 1572. *Engle* then decid-

ed on its particular facts that "cause" for the default had not been shown. We think in Pickens' case, however, that he has demonstrated "cause" for the default in his counsel's ineffectiveness. We earlier discussed several facets of Plant's representation that fell below the standard required for competent counsel. Because Pickens received ineffective assistance of counsel at his trial we think he has shown cause for not earlier raising his constitutional claim.

We further find that Plant's failure to object to the erroneous instruction actually prejudiced Pickens in the penalty phase of the case. *See United States v. Frady,* 456 U.S. at 170, 102 S.Ct. at 1595. In the course of its deliberation about penalty, the jury came back in to ask for an explanation of the limited-participation mitigating circumstance. The trial judge told them to "figure it out for yoursel[ves]" and gave no further instructions. Instruction 9A directed the jury to assess punishment equally for principals and accessories, while the limited-participation circumstance theoretically allowed the jury to assess a lighter penalty depending on the extent of Pickens' involvement in the felony murder. Under the rule of *Lockett v. Ohio,* 438 U.S. at 608, 98 S.Ct. at 2966–67, a sentencer must not be precluded from considering all relevant mitigating elements of the offense. *See Washington v. Watkins,* 655 F.2d 1346, 1373 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). Instruction 9A violated the *Lockett* rule because it directed the jury to assess an accessory's punishment as if no mitigating elements of the offense existed. We think that Pickens, who consistently maintained his innocence in the actual shootings, was substantially and actually prejudiced by the giving of this instruction and that his death sentence must be vacated.

The district court, when considering this issue, found that Pickens could not claim to be prejudiced by an instruction about the punishment of an accomplice because the jury had determined that Pickens was not an accomplice. 542 F.Supp. at 612. We find the district court's reasoning is in er-

ror. The very finding on which the court relies was the jury's negative finding as to the limited-participation mitigating circumstance; however, consideration of this circumstance was effectively negated by instruction 9A when the jury was informed they "shall" assess punishment for an "accessory as if he were a principal." The jury indicated that they were confused about the meaning of the mitigating circumstance. The term "accomplice" was never defined for them. The district court reads too much into the jury's finding on a verdict form in the *penalty* phase of the case, when the jury was without the assistance of any mitigating evidence.[12] We think that the district court erred in concluding that the instruction did not prejudice Pickens.

## III. CONCLUSION.

A reasonably competent attorney exercising customary diligence would have presented mitigating evidence on Pickens' behalf in the sentencing phase of the trial. We deem the failure to present *any* evidence highly prejudicial. Further, the giving of the erroneous jury instruction that was not objected to by trial counsel prejudiced Pickens in the penalty phase of his trial. Therefore, we remand to the district court with instructions that the State of Arkansas vacate Pickens' sentence of death and either reduce his sentence to a life sentence without parole, as prescribed by Arkansas law, or to conduct a new sentencing procedure. If the State does not order a new sentence within a reasonable time frame to be determined by the district court, the petition for a writ of habeas corpus will be granted.

It is so ordered.

HENLEY, Senior Circuit Judge, concurring and dissenting.

In main so much of the court's opinion as relates to the guilt phase of the Pickens trial is acceptable to me and I concur in the holding that Pickens was lawfully convicted. However, I would go further and uphold the death penalty as well largely on the basis of the well-reasoned opinion and findings of the district court. *Pickens v. Lockhart,* 542 F.Supp. 585 (E.D.Ark.1982).

Relatively complete accounts of the facts surrounding the heinous crime committed by Pickens may be found in the opinion of the Supreme Court of Arkansas in *Pickens v. State,* 261 Ark. 756, 551 S.W.2d 212 (1977), and in the opinion of the district court, *Pickens v. Lockhart, supra,* and no detailed statement is needed here. From the record, it is clear that Pickens undoubtedly fully and actively participated in the robbery, rape and murder episode at Casscoe. He was identified as having been in possession of both the shotgun and pistol used in the shootings, he took at least some of the victims into a back room of the store, and when apprehended he was wearing the rape victim's wedding ring. Both he and Clark were identified as having done the shooting. The black customer, Wesley Noble, for whose murder Pickens was convicted, was shot twice. In light of the overwhelming evidence of guilt the defense that Pickens did not participate in the shooting, that is, that he was not the triggerman, was hopeless. The court virtually concedes as much in its discussion of the guilt phase of the trial.

It is equally true that the "limited participation" defense at the sentence hearing had no merit. There was no mitigating factor based on limited participation. It is true that Clark also participated fully in the Casscoe episode. But all that means is that a jury would have been justified in imposing on Clark a death sentence also, as in fact was done. *Clark v. State,* 264 Ark. 630, 573 S.W.2d 622 (1978).

---

12. The verdict form was labeled "Mitigating Circumstances." Under "(d)," the following appeared:
 (d) Place check mark in the appropriate space:
 ( ) The capital felony was committed by another person and the Defendant was an accomplice or his participation relatively minor.
 (X) The capital felony was not committed by another person and the Defendant was not an accomplice or his participation relatively minor.

So far as mitigating background in Louisiana and Detroit is concerned, we now know that Pickens had a troubled youth in Louisiana where he lived until he was fifteen. For a time he was incarcerated in Louisiana for breaking into a store and stealing. He then moved to Detroit where evidently he fell into bad company and was involved in at least one armed robbery. He associated in street gang activity, used drugs and served a term in the Michigan penitentiary. He was in violation of conditions of his Michigan parole in associating with Clark and had helped steal at least one car.

The court finds it "sheer speculation" that character witnesses might have done more harm than good and holds that it was incumbent upon Pickens' counsel to offer mitigation proof. I disagree. Proof in Prairie County, Arkansas that a young black from a broken home in Louisiana, who had trouble with the law as a juvenile, moved to Detroit where he fell into bad company and had more trouble with the law, hardly can be said likely to save the life of the defendant. To the contrary, such evidence well could have tended to resolve whatever doubts counsel might have been able to suggest through argument and to ensure for Pickens a speedy and certain imposition of the maximum penalty. Yet this court finds it was incumbent upon counsel to offer this "mitigating" proof and thereby forthwith to condemn Pickens to perdition!

With all due respect, I dissent from so much of the judgment as vacates the sentence of death.