Earl CLANTON, Petitioner,

v.

Toni BLAIR, et al., Respondents.

Civ. A. No. 85–0224–R.

United States District Court,
E.D. Virginia,
Richmond Division.

July 3, 1986.

Mecklenburg Correctional Center and is under a sentence of death. Petitioner's date of execution has not yet been set.

### Background

On November 16, 1980, Wilhemina Smith ("Smith") was found by two police officers dead on her bedroom floor with cuts on her throat and a belt drawn tightly around her neck. The police found petitioner hiding under a bed in Smith's second bedroom.

Petitioner was charged with committing the capital murder of Smith, while in the commission of robbing her home and being armed with a deadly weapon, in violation of Va.Code § 18.2–31(d). The trial court promptly appointed counsel, on behalf of petitioner. On December 18, 1980 the originally appointed counsel withdrew and on that same date, the Court appointed still another attorney to represent petitioner. Just four days later, on December 22, 1980, after relieving the second and third appointees, still another attorney was appointed to represent the petitioner, and remained his counsel throughout the appeal of his conviction.

On March 13, 1981, after a two-day jury trial, petitioner was found guilty of the capital murder of Smith while in the commission of a robbery in violation of Va. Code § 18.2–31(d). Immediately following the guilty verdict, the sentencing stage of the trial was conducted and the jury concluded that Clanton should be put to death. Pursuant to Va.Code § 19.2–264.5, the probation officer then prepared a report on petitioner and submitted it to the trial court for review. On May 1, 1981, after considering the contents of the probation officer's report, the trial court imposed the death sentence.

Petitioner, represented by the same trial counsel, appealed his conviction to the Virginia Supreme Court alleging five (5) grounds of error.[1] The Virginia Supreme

William B. Moffitt, Thomas Rawles Jones, Jr., Lisa Bondareff Kemler, Alexandria, Va., for petitioner.

Thomas D. Bagwell, Asst. Atty. Gen., Richmond, Va., for respondents.

### MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on petitioner's petition for habeas corpus relief, filed pursuant to 28 U.S.C. § 2254, which alleges ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. Petitioner is presently incarcerated at

---

1. The five grounds of error were as follows: (i) denying Clanton's motion for a change of venue or venure, *Clanton v. Commonwealth,* 223 Va. 41, 286 S.E.2d 172, 177 (1982); (ii) admitting certain autopsy photographs of the victim, *id.;* (iii) failing to instruct the jury to disregard allegedly improper arguments of the prosecutor, *id.* at 178; (iv) allegedly improperly answering a question that the jury submitted to the trial court after retiring to deliberate Clanton's guilt

Court found none of the grounds of error meritorious, and affirmed the trial court.

Represented with newly-appointed counsel, petitioner filed a writ of habeas corpus in the Circuit Court for the City of Petersburg pursuant to Va.Code § 8.01–654(B). The Circuit Court denied the petition on December 14, 1983. Petitioner then filed an appeal of the Circuit Court's decision to the Virginia Supreme Court, however the Virginia Supreme Court found no reversible error in the judgment complained of and refused to grant the petition for appeal on December 11, 1984.

Petitioner, having exhausted the available state remedies [2], petitioned this federal court, pursuant to 28 U.S.C. § 2254 for relief. Respondents filed a motion to dismiss the petition, to which petitioner provided no response. Respondents then filed a motion for summary judgment, and petitioner, although untimely, filed a response thereto. Oral argument was not requested on the summary judgment motion, and the Court ruled in its memorandum opinion filed October 18, 1985 ("October 18 Opinion") that all claims asserted therein, except for those denoted as 9(d) and 9(o), were dismissed, summary judgment being granted to the Commonwealth.

An evidentiary hearing was conducted on February 19, 1986 wherein the Court heard further testimony from petitioner and his state trial counsel relating to claims 9(d) and 9(o). The issues before the Court have been fully briefed and argued, and are now ripe for disposition.

*Merits*

The success of petitioner's habeas corpus petition is based on the resolution of one general issue: whether he was denied the effective assistance of counsel at his trial in the Circuit Court for the City of Petersburg. Although petitioner alleged a number of specific omissions which he argued

constituted ineffective assistance of counsel, this Court, in its October 18 Opinion, dismissed all but two of his claims. Accordingly, these two claims, counsel's failure to advise petitioner adequately of the strength of the Commonwealth's case and the advisability of accepting the Commonwealth's plea offers, and his failure to prepare adequately for sentencing, will encompass the substance of petitioner's claim and thus the substance of this memorandum opinion.

*A. Legal Standard*

 In determining whether defendant has been denied the effective assistance of counsel such as to rise to a constitutional violation, the Court must consider two issues. First, the defendant must establish that counsel's acts or omissions complained of reflect unreasonable professional judgment, in light of all the circumstances. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court, in determining the unreasonableness of counsel's conduct, may consider the seriousness of the charges against the defendant. *See Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir.1983). However, *Strickland* makes clear that there is always a strong presumption in ineffective assistance claims that counsel's conduct is not unreasonable. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. Second, the individual must show that he/she was prejudiced by counsel's unprofessional conduct; "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland,* 466 U.S. at 691–92, 104 S.Ct. at 2067. In order to prove prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104

---

or innocence, *id.* at 179; and (v) Virginia's death penalty statute is unconstitutional because it is overly broad and impermissibly vague.

**2.** The Court held in its October 18 opinion that the Respondents had "expressly and uncondi-

tionally waived, in blanket fashion, the exhaustion requirement with respect to any unexhausted claims in the instant petition." *See* October 18 Opinion, p. 4.

S.Ct. at 2068. In defining "reasonable probability," the Court held that it was a "probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In fact, the Court framed the prejudice issue in terms relative to a defendant challenging a death sentence, and stated that "the question is whether there is a reasonable probability, that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069.

### 1. *Counsel's failure to prepare adequately for sentencing.*

#### a. *Performance.*

■ The Court finds that trial counsel did not perform reasonably at the penalty phase of petitioner's proceeding and thus his acts and omissions fall below the acceptable standard of conduct as articulated in *Strickland.* *Strickland,* at 466 U.S. 687, 104 S.Ct. at 2064.

In *Clark v. Townley,* (E.D.Va.1985), the court was faced with a factual situation similar to the one found in the instant case, and in its application of the *Strickland* test held that the defendant had been denied the effective assistance of counsel, in violation of the Sixth Amendment of the U.S. Constitution.

The pertinent facts of *Clark* are as follows:

In *Clark,* petitioner was charged with the capital murder of one George Scarborough. Petitioner was found guilty as charged and sentenced to death by the same jury in one day. At the sentencing phase, petitioner's attorney presented only two witnesses in mitigation of Clark's sentence, despite the fact that petitioner's trial counsel knew that there "really was no defense to the crime insofar as guilt was concerned, and that his only hope was to spare Clark the death sentence." *Clark v. Townley,* No. 84–1271–AM, slip op. at 11,

(E.D.Va. June 24, 1985), *aff'd,* 791 F.2d 925 (4th Cir.1986).

Crucial to the court's conclusion was its finding that despite counsel's suspicions that his client had been the subject of an oppressive childhood, he still failed to take steps to investigate Clark's background through either a psychiatric examination obtained under protective order of the court or live witness testimony. It was the Court's holding that

> faced with almost certain defeat at the guilt stage of the proceeding, with the only hope for their client to be the presentation of some evidence of mitigation at the sentencing phase, trial counsel's failure to seek out psychiatric evidence or at least to pursue further evidence from lay witnesses, all of whom were available upon reasonable inquiry, to aid them, was unreasonable.

*Clark,* No. 84–1271–AM, slip op. at 13.

Like the petitioner's counsel in *Clark,* this Court finds that Clanton's counsel, in the instant case, became aware of certain facts in Clanton's background which should have lead counsel to suspect that his client was the subject of an "oppressive childhood." Despite the fact that he was able to uncover the following, counsel regrettably did not investigate petitioner's background any further.

1. Clanton's father, Earl Clanton, Sr., died in 1974 of a brain tumor when Clanton was only 20 years old.

2. Clanton's mother, Annie L. (Perry) Clanton, was living in Petersburg, Virginia until petitioner was arrested for the murder of Smith when she moved to New Jersey.

3. Clanton has three sisters, Patricia, 28; Evelyn Theresa, 17; and Gala, 15. Clanton has two brothers, Gary, 20, and Charlie, 18.

4. Clanton was "shipped around" as a youth, and as a consequence had an unstable homelife.

Clanton's parents separated when he was a baby. He first lived with his maternal grandmother, Mrs. Lory Perry, and then

moved to his father's home in Highland Springs, Virginia. His father was gone 3-4 days a week because of his job.

In 1969, when petitioner was 15, he moved to New Jersey to live with his mother. In 1961, while in New Jersey, petitioner became immediately addicted to Heroin, and in 1971 he was convicted of larceny as a juvenile and committed to a state institution for confinement. About one year later, he was charged with a murder, and according to petitioner, was coerced into pleading guilty, and received a penitentiary sentence of 26-28 years. Petitioner was incarcerated in the New Jersey State Penitentiary on April 12, 1973 until he was discharged on parole on November 13, 1979.

While on parole he initially lived with his mother and brothers and sisters in Petersburg, Virginia, and then moved to an apartment of his own.

On February 29, 1980, petitioner was arrested and charged with malicious wounding. On April 28, 1980, petitioner's case for malicious wounding was tried in the Circuit Court for the City of Petersburg, where during a luncheon recess petitioner left the courtroom and did not return. Until his subsequent arrest for the murder of Smith on December 9, 1980, petitioner's whereabouts had been unknown.

The American Bar Association's Standards for Criminal Justice hold that:

> The lawyer has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the Court at sentencing. This cannot effectively be done on the basis of broad emotional appeals or on the strength of statements made to the lawyer by the defendant. Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense. In-

vestigation is essential to the fulfillment of these functions.

1 ABA Standards for Criminal Justice Standard 4-4.1 commentary at 4-55 (2d ed. 1980).

Furthermore, the court in *Clark, supra,* stated that where "counsel are aware of a number of factors, the cumulative effect which, if not singly, surely indicate at the very least, an inquiry by a trained psychiatrist and further lay inquiry," *Clark,* No. 84-1271-AM, slip op. at 13, such an inquiry must be taken by counsel.

■ Although the Court recognizes that counsel was dealing with a demanding client who allegedly refused to succumb to a psychiatric examination and refused to agree to counsel interviewing relatives and friends, the Court finds that such a client does not negate a lawyer's duty to provide effective assistance of counsel. Section 5.2 of The American Bar Association Standards Relating to the Defense Function provides, "the decisions on what witnesses to call ... and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client." *Cited with approval* in *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir.1977). The lawyer cannot relinquish his professional responsibilities, including tactical decisionmaking, to the client.

In *Pickens v. Lockhart,* 714 F.2d 1455 (8th Cir.1983), the court held that "it is only after a full investigation of all the mitigating circumstances that counsel can make an informed tactical decision about which information would be the most helpful to the client's case." *Pickens,* 714 F.2d at 1467. In the instant case, trial counsel did not conduct any investigation into possible mitigating factors, despite his knowledge of the petitioner's turbulent background. It is this Court's view, guided in part by *Clark, supra,* that counsel's failure to either interview lay witnesses or seek a psychiatric examination of his client cannot be defended by counsel as a tactical decision. *See Clark,* No. 84-1271-AM, slip op. at 13.[3]

---

**3.** Of course whether to call Gary Clanton, petitioner's brother, to support that petitioner

worked with kids, was considered by Hauler and dismissed after he decided that the value of

Counsel's ineffectiveness at the sentencing stage is not solely based on his lack of investigating mitigating evidence and his lack of pursuing a psychiatric examination, but is further substantiated by the existence of the following facts:

■ Unfortunately counsel was an inexperienced lawyer who had never represented a defendant charged with capital murder. Although such inexperience would, in the Court's mind, require an unusual devotion of time on the part of counsel to become familiar with the underpinnings and complexities of the subject matter, counsel testified that he had met with Clanton only six times—which included the day of trial—for a total of eight hours. Furthermore, he testified that it was his belief his client would be found guilty, and thus his only hope for mitigation would be at the penalty phase. Despite the obvious importance of mitigating evidence to a life sentence as opposed to one for death, counsel did not even begin to prepare for the defense of his client's sentence until the jury had retired to deliberate petitioner's guilt. Such a dilatory preparation, in the face of a possible death sentence, can only be categorized as unreasonable professional conduct. Counsel's lack of effort is more pronounced when considered in the context of his having anticipated a finding of guilt. Understandably, due to this failure of preparation, the only mitigating evidence available to counsel was the petitioner himself. Petitioner, however, provided testimony of an impeachable quality; during his trial he told the jury he was a devout Muslim, while during the penalty proceeding he told the jury he was a religious man because he attended Christian bible classes while incarcerated.

In light of the seriousness of petitioner's offense, the representation he received can only be found to have fallen below the standard of reasonable conduct.

b. *Prejudice.*

The prejudice inquiry is an important yet difficult question. It is important because it is the deciding factor in determining whether petitioner has a valid ineffectiveness claim. It is difficult because it is a subjective inquiry which cannot easily be applied absent very specific guidelines.

*Strickland* states generally that in order to prove prejudice, a petitioner must show that there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. In order to make this determination, the Court must first resolve whether the information would have been discovered, had counsel acted reasonably. If the Court finds that the information would have been reasonably available to counsel, then the Court must determine if its substance would have changed the outcome of the petitioner's proceeding.

On February 19, 1986, when this Court held its evidentiary hearing, Clanton revealed the following uncontested testimony:

1. Petitioner was forced to move from his father's home in Virginia to his mother's home in New Jersey when he was 14 because his father was an excessively abusive parent and his stepmother sexually molested him.

2. Petitioner then lived in New Jersey with his real mother who was a prostitute.

3. Petitioner's mother reported him to the police in 1971 for stealing from her personally. Petitioner's version is that she turned him in because he would not sleep with her.

This Court is confident in its finding that counsel acted unprofessionally in this matter, however, it is a far more difficult inquiry for the Court to determine whether this mitigating evidence would have been discovered by a professional attorney acting reasonably.

Despite the fact that Clanton had been represented by present counsel throughout his state and federal habeas proceedings,

his testimony was outweighed by its impeachable possibilities. This is a tactical decision by

Hauler which is not the subject of the Court's ineffectiveness review.

Clanton did not reveal the facts of his abusive childhood until one week prior to his evidentiary hearing in February. Whether such a revelation would have been discovered by counsel conducting a reasonable investigation is suspicious.

Clanton's mother, who testified at the state habeas proceeding, never indicated that Clanton was an abused child. The probation officer's post-sentence report certified by Clanton to be true and correct, did not reveal an abusive childhood. Furthermore, Clanton's testimony, which was not introduced until he was at the end of his available judicial remedies, seems motivated by the possibility and reality of death; and not his desire to tell the truth.

■ However unlikely it might have been that counsel himself could have discovered petitioner's allegedly abusive background, the Court finds it highly likely that had he pursued a psychiatric examination of his client, the facts of petitioner's background would have been more conclusive. Accordingly, it is the Court's finding that counsel's failure to obtain a psychiatric examination of his client precluded his ability to obtain mitigating evidence which might have been crucial to his client's case. Indeed, counsel's failure to make the slightest effort to obtain mitigating evidence was, though unintended, tantamount to complete dereliction of his professional obligation.

Would the possession of this information have changed the outcome of petitioner's proceeding?

As the court noted in *Clark*, "[t]here is no way of knowing with certainty whether, had the foregoing been presented to the factfinder, be it jury or judge, the sentencer would have concluded that they were sufficiently mitigating to warrant life as opposed to death." *Clark*, No. 84–1271–AM, slip op. at 15. However, as the court in *Clark* found,

[w]hen it is remembered that the petitioner only had to persuade one of the twelve jurors to hold out for mitigation the court concludes that its confidence in the outcome of the sentencing phase is undermined by the revelation of the evidence which, but for the attorney errors, would have been presented to the jury. *Clark*, No. 84–1271–AM, slip op. at 15.

In the instant case, Clanton presented his uncontradicted testimony regarding his difficult childhood at the evidentiary hearing of February 19, 1986. The Court is of the mind that there does exist a reasonable probability that had the sentencer heard this evidence, at least one juror and perhaps all, as well as the trial judge, would have concluded that, balancing the aggravating factors, of which there were many, and mitigating factors, of which there were a significant number, the death penalty was not warranted.

2. *Guilty plea.*

The Court noted in its October 18 opinion that it could not evaluate whether Counsel failed to advise him adequately of the strength of the Commonwealth's case and the advisability of accepting the Commonwealth's plea offer until further facts were developed.

The evidence represents that Counsel went over the Commonwealth's evidence with Clanton prior to trial[4] and that he advised Clanton on more than one occasion that if his theory of defense was not accepted by the trier of fact that he could receive the death penalty. He further advised Clanton of the difficulties of his defense.[5]

Although counsel met with the Assistant Commonwealth's Attorney prosecuting Clanton's case, and discussed with him the possibility of a guilty plea, the Commonwealth never offered a plea agreement and counsel didn't pursue it because his client

4. Federal Habeas Transcript, pp. 41–42.

5. Federal Habeas Transcript, pp. 43–44, 59; State Habeas Transcript, pp. 140–42.

was so adamantly opposed to accepting a plea.

■ The Court finds that this evidence does not support an ineffective assistance of counsel claim.

*Conclusion*

The Court finds that petitioner was denied the effective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution in that petitioner's counsel did not prepare adequately for the penalty phase of the proceeding and it prejudiced the outcome of his case. Accordingly, the Court will grant petitioner's petition for habeas corpus filed pursuant to 28 U.S.C. § 2254, and remand the cause to the Circuit Court for the City of Petersburg in order that petitioner can be resentenced.

An appropriate order shall issue.

ORDER

For the reasons stated in the accompanying memorandum this day filed, the Court hereby ADJUDGES and ORDERS that petitioner's petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 be and the same is hereby GRANTED in the following respect.

The sentence of death imposed on May 1, 1981 by the Circuit Court of the City of Petersburg, Virginia in accordance with the March 13, 1981 verdict of the jury is declared NULL AND VOID.

The Commonwealth of Virginia shall, within a reasonable time of this date, cause the petitioner to be resentenced after a sentencing hearing pursuant to the procedures as set out in Va.Code § 19.2–264.3 C. Unless an appeal from this Order is taken to the United States Court of Appeals for the Fourth Circuit within thirty (30) days of this date, the Clerk shall return all state court records held by him in this cause to their appropriate custodian.

Let the Clerk send a copy of this order to all counsel of record.