Darrel Wayne HILL, Petitioner,

v.

A.L. LOCKHART, Director Arkansas Department of Correction, Respondent.

Civ. No. PB–C–82–375.

United States District Court, E.D. Arkansas, Pine Bluff Division.

June 23, 1993.

**1330**

Ray E. Hartenstein, Ark. Death Penalty Resource Center, Inc., Little Rock, AR, for petitioner.

Jack Ward Gillean, Atty. Gen.'s Office, Little Rock, AR, for respondent.

### MEMORANDUM OPINION AND ORDER

HOWARD, District Judge.

On July 11, 1980, a jury convicted petitioner Darrel Wayne Hill ("Hill") of capital felony murder, kidnapping and aggravated robbery in connection with the death of Donald Lee Teague. Hill was sentenced to death in connection with the capital felony murder and 50 years each on the other felonies. The jury also convicted Hill of attempted capital murder, kidnapping and aggravating robbery in connection with offenses against E.L. Ward. Hill was sentenced to life, and fifty years each respectively with regard to those offenses. Hill has filed a petition for writ of habeas corpus, raising thirteen separate grounds for relief.

### Factual Background

In the afternoon of February 7, 1980, Hill drove into E.L. Ward's Service Station in Pencil Bluff, Arkansas. Ward checked Hill's radiator and filled his car with gas. A little later, Donald Teague, an Arkansas Game and Fish Commission officer, drove into the station, also wanting gas. Ward went inside the garage to clear the pumps. Hill, who was waiting inside the garage, pulled a gun on Ward and demanded his money. Hill then ordered Ward to put the money from the cash register into a money bag along with his wallet. Teague entered the garage at this time, and Hill pointed the gun at Teague, told him to put his billfold in the money bag and told both men that they were going for a ride.

Hill ordered Teague to drive the car and Ward to bring the money bag. While in the car, Hill took the money from Ward's wallet and put it in his pocket. Hill ordered Teague to drive to a gravel road off the main highway. Hill had Teague stop the car, directed Teague and Ward into some weeds and forced them to lie down on their stomachs with their hands behind them. Hill shot Teague several times, killing him. Ward begged Hill to quit shooting, but Hill then shot Ward four times, wounding him. Ward remained in the weeds, not moving, until Hill had driven away. Ward then crawled back to the road, where he was found later that afternoon. Ward gave the police a description of his assailant and the car he was driving as Ward was taken to the hospital in Hot Springs.

A few hours later, a Hot Springs police officer saw a car matching the description. He stopped the vehicle at about the same time another officer arrived as back up. A search of the car yielded a brown paper sack containing a loaded Charter Arms .38 special and a large quantity of coins under the front seat on the driver's side. Hill was arrested and charged with the offenses of which he was ultimately convicted.

Hill appealed his convictions and sentences to the Arkansas Supreme Court. The court affirmed the conviction and sentence for capital felony murder but set aside the lesser included offenses of kidnapping and aggravated robbery in connection with the offenses against Teague. *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982). The court found that Ark.Stat.Ann. § 41–105(1)(a) and (2)(a) (Repl.1977) (now codified as Ark.Code Ann. § 5–1–110 (1987)) prohibits the entry of a judgment of conviction on capital felony murder or attempted capital felony murder and the underlying specified felony or felonies.[1]

---

**1.** The court would not set aside the kidnapping and aggravated robbery included in the attempted capital felony murder conviction as the error was raised for the first time on appeal. The court noted that it could set aside the underlying felony convictions with regard to the capital felony murder conviction as the court will consider, in death cases, errors argued for the first time on direct appeal where prejudice is conclusively shown by the record. 275 Ark. at 77, 628 S.W.2d 284.

The United States Supreme Court denied Hill's petition for writ of certiorari on October 4, 1982. *Hill v. Arkansas*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982).

Hill then sought post-conviction relief from the Arkansas Supreme Court pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. The petition was denied, but the court set aside the convictions of kidnapping and aggravated robbery underlying the attempted capital murder conviction. *Hill v. State*, 278 Ark. 194, 644 S.W.2d 282 (1983).

Prior to filing his Rule 37 petition, Hill had filed a petition for writ of habeas corpus. Once Hill exhausted his state remedies, the Court entered an order staying execution. Hill filed an amended petition for writ of habeas corpus on April 7, 1989.[2] The Court conducted an evidentiary hearing on October 31, and November 1, 1990. The Court will address the claims raised in the amended petition.

## Discussion

■ I. Hill argues that the Arkansas death penalty statute is unconstitutional because the capital felony murder statute (Ark. Stat.Ann. § 41–1501 (Repl.1977) now codified as Ark.Code Ann. § 5–10–101(a)(1) (1987)) overlaps with the first degree felony murder statute (Ark.Stat.Ann. § 41–1502(1)(a) (Repl.1977) now codified as Ark.Code Ann.

5–10–102(a)(1) (1987)) and there are no standards to distinguish the two offenses thereby leading to the possibility that the jury's decision will be arbitrary and capricious.

The Arkansas Supreme Court rejected this argument, noting that the same argument had been rejected in other cases. *Hill*, 278 Ark. at 202, 644 S.W.2d 282. Recently, the Eighth Circuit held that the overlapping capital felony murder and first-degree felony murder statutes are not unconstitutionally vague. *Simpson v. Lockhart*, 942 F.2d 493 (8th Cir.1991). The court found that "each statute unambiguously specifies the conduct prohibited and the penalties authorized upon conviction. This satisfies the fair notice requirements of the due process clause." 942 F.2d at 497.

The Court finds that the death penalty statute is not unconstitutionally vague or denies Hill equal protection because it overlaps with the first degree felony murder statute.

■ II. Hill contends that he was denied his right to a fair trial because the trial court denied his motion for change of venue based on pretrial publicity.

A hearing on Hill's motion for change of venue was held prior to trial. Defense counsel introduced the testimony of six witnesses who testified that they did not think Hill could receive a fair trial in Montgomery

---

**2.** The Governor set Hill's execution date for November 19, 1982. On November 12, Hill filed his original petition for writ of habeas corpus. At that time he had not exhausted his state remedies as his Rule 37 petition was pending before the Arkansas Supreme Court.

The Arkansas Supreme Court granted a stay of execution on November 15, 1982. The Court, on November 19, 1982, abstained from further action in the case in light of the pending state proceedings.

After the state supreme court denied the Rule 37 petition, the Governor set February 19, 1982 as Hill's execution date. Hill filed a supplemental application for stay of execution. On February 2, 1982, the Court granted Hill's motion for stay of execution.

Because of respondent's informal agreement to delay proceedings on a number of habeas petitions until the United States Supreme Court decided certain issues pertaining to the constitutionality of Arkansas' death penalty statute, no further action was taken until January 23, 1989, when the Court directed Hill to file an amended petition.

Some delay is necessitated by the special nature of habeas review of a death sentence. "The severity and finality of the death penalty requires the utmost diligence and scrutiny of the court." *Mercer v. Armontrout*, 864 F.2d 1429, 1431 (8th Cir.1988). As the Honorable Donald P. Lay, former Chief Judge of the United States Court of Appeals for the Eighth Circuit has stated:

Regardless of rhetoric that death penalty cases should receive the same review on habeas corpus as imprisonment cases, capital punishment is unique because it is irrevocable once performed. Therefore, it is incumbent upon a civilized society to make judicial procedures for capital punishment fundamentally fair, nondiscriminatory, and nonarbitrary.... Judicial review of death sentences must provide a studied examination of any violations of those standards.

Donald P. Lay, *The Writ of Habeas Corpus: A Complex Procedure for a Simple Process*, 77 Minn. L.Rev. 1015, 1017 (1993) (hereinafter Lay).

County.[3] The state presented three witnesses who testified that they believed Hill could receive a fair trial.

The court, after considering the testimony, affidavits, and newspaper articles, found that Hill had not met his burden of demonstrating county-wide prejudice and denied the motion.

Defense counsel renewed the motion for change of venue at the beginning and end of voir dire. Counsel also requested that the voir dire be made part of the record on the motion.[4]

■ On appeal, the Arkansas Supreme Court found that the trial court had not abused its discretion in denying the motion for change of venue. 275 Ark. at 83, 628 S.W.2d 284. The trial court's determination as to the jury's impartiality is entitled to deference and can be overturned only for "manifest error." *Patton v. Yount*, 467 U.S. 1025, 1031, 104 S.Ct. 2885, 2888, 81 L.Ed.2d 847 (1984) (trial judge's finding that a particular venire person was not biased and therefore properly seated is finding of fact subject to 28 U.S.C. § 2254(d)).

The trial court in this case conducted a general voir dire, and then the parties conducted individual voir dire. Two prospective jurors, Hicks and Goss, were excused for cause during the general voir dire because they had fixed opinions regarding Hill's guilt which they could not set aside (Tr. 455). Sixty-six prospective jurors were examined during the individual voir dire. Of those, thirty-five were excused for cause, although not all because they had formed an opinion. A number of prospective jurors had a close relationship or friendship with E.L. Ward which affected their ability to be impartial (e.g., Maurine West, Tr. 516; Mary Lewis, Tr. 755; Edith Chambers, Tr. 909). Pearl Block was excused because her husband was

a friend of Teague (Tr. 965). Prospective jurors McKinney and Scantling were excused for medical reasons (Tr. 572, 833). Wilma Lewis was excused on *Witherspoon* grounds (Tr. 876).

The record establishes that the jurors who were seated demonstrated that they could be fair and impartial. Bill Turpin knew Ward for 15 to 20 years but stated that he had no opinion as to Hill's guilt (Tr. 533). Laura Brandon also had no opinion, and she had not read or heard much about the case (Tr. 592). Similarly, Lelia Lewis had no knowledge of the facts of the case or the persons involved (Tr. 616). Jo Ellen Carmack also knew Ward, but assured the court that she could set aside her feelings and listen to the evidence (Tr. 737). James Fryar had read news accounts but had no opinion as to Hill's guilt (Tr. 742). Glenn Gaston was a friend of Ward and had read about the case, though he had not formed an opinion as to Hill's guilt. He assured the court that he could set aside what he had heard and base his verdict on the evidence (Tr. 755). Lillian Adams and Wanda Reed both had read or heard about the case but neither had formed opinions, and stated that they could put aside what they had heard (Tr. 770, 847). Opal Warren did not know much about the case and had not formed an opinion (Tr. 891). Betty Carter was acquainted with Ward, had read about the case and talked with others about it. However, she stated that she had not formed any opinion and assured the court that she could set aside what she had heard and give Hill a fair trial (Tr. 913–918). Barbara Buck had an opinion but stated that she would base her verdict solely on the evidence (Tr. 922). Mary Lee Harper indicated that she had formed an opinion about the case, but after extensive questioning assured the

---

3. Even some of Hill's witnesses were not so certain that Hill could not receive a fair trial. Larry Graves, editor of the county newspaper, opined that whether Hill could get a fair trial in the county depended on the jurors who were selected. He testified that many people in the county had not formed an opinion or would be willing to listen to the evidence (Tr. 168). Lena May Helms testified that she did not have an opinion as to Hill's guilt or innocence (Tr. 208).

References to the state record of the trial proceedings are designated as Tr. References to the transcript of the evidentiary hearing are designated as H.T.

4. Although the trial court responded that it would consider the matter of change of venue at a later time (Tr. 512), the transcript does not reflect that the trial judge ever made any additional ruling on the renewed motions for change of venue.

court that she could be fair and impartial (Tr. 951–963).

■ Jurors are not required to be totally ignorant of the facts and issues involved in a case. *See Simmons v. Lockhart,* 814 F.2d 504, 510 (8th Cir.1987), *cert. denied,* 485 U.S. 1015, 108 S.Ct. 1489, 99 L.Ed.2d 717 (1988) ("The accused is not entitled to an ignorant jury, just a fair one.") "[A]n important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

The Court, in *Irvin,* refused to adopt a standard that any preconceived opinion as to a defendant's guilt or innocence, without more, would be sufficient to rebut the presumption of a prospective juror's impartiality. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." 366 U.S. at 723, 81 S.Ct. at 1643.

Here, the record establishes that the court, along with counsel, conducted a thorough voir dire. Those prospective jurors who had set opinions that they could not set aside were excused for cause. The jurors that were seated had adequately assured the court that they could set aside their opinions and base their verdict solely on the evidence.

Furthermore, the record does not reveal "the kind of 'wave of public passion' that would have made a fair trial unlikely by the jury that was empaneled as a whole." *Patton v. Yount,* 467 U.S. at 1040, 104 S.Ct. at 2893. The adverse publicity had occurred within the first few weeks following the ar-

rest of Hill, and by the time of the trial, community discussion had diminished considerably.

The Court finds that the trial court did not commit manifest error in denying Hill's motion for change of venue.

■ III. and IV. Hill contends that he was denied his Fifth, Eighth, And Fourteenth Amendment rights and his right to a fair trial on the issue of punishment because of the trial court's failure to grant a severance of offenses and its improper submission of the lesser included offenses to the jury as separate, substantive offenses at the guilt stage and subsequently for punishment at the sentencing phase. In addition, Hill states that the prosecutor improperly argued that the jury should consider his prior criminal record in determining his punishment when Hill did not put his prior criminal record in issue.[5]

As noted above, the underlying felony convictions of kidnapping and aggravating robbery were set aside by the Arkansas Supreme Court as violative of Ark.Stat.Ann. § 41–105. The court refused to find that the erroneous submission of the underlying felony convictions prejudiced the sentencing procedure.

Hill combines several different arguments all of which go to the fairness of the sentencing procedure. Hill contends that the jury's improper consideration of enhanced punishment and the actual imposition of four enhanced sentences of fifty years for the lesser included offenses had a prejudicial impact on the jury's consideration of the appropriate punishment for the capital offense. Hill also contends that the prosecutor erroneously

---

5. In his post-hearing brief, Hill has combined discussion of grounds Three and Four of his petition. The Amended Petition states as Ground Three: "Petitioner was denied rights secured to him by the Fifth, Eighth, and Fourteenth Amendments and a fair trial on the issue of punishment by the failure of the trial court to grant a severance of offenses and by the trial court's improper submission to the jury as separate, substantive offense at both the guilt stage, and subsequently for punishment at the sentencing phase, the lesser included offenses of aggravated robbery (2 counts) and kidnapping (2 counts)."

The Amended Petition states Ground Four as follows: "Petitioner was denied his rights under the Fifth, Eighth and Fourteenth Amendments by the prosecutor's improper argument to the jury that it should consider petitioner's extensive prior criminal record in determining punishment because such is not a statutory aggravating circumstance and petitioner did not put his prior criminal record in issue."

The Court has similarly consolidated the discussion of the two grounds because of the impact of the combined effect of the submission of the underlying felonies, and the prosecutor's improper argument. *See infra.*

used the non-violent felonies to establish the absence of a mitigating factor.

To understand Hill's position, a review of the proceedings is necessary. After the jury returned verdicts on all six offenses, the court progressed to the sentencing proceedings.[6]

The state sought to introduce five previous felony convictions. Defense counsel objected, arguing that three of the felonies did not fall within the definition of a statutory aggravating circumstance. The prosecutor then stated that he was offering the three non-violent felonies for enhancement purposes only with regard to the non-capital offenses, and not as a statutory aggravating circumstance. The trial court ruled that the three non-violent felonies would be admitted with a limiting instruction that they were not to be considered in connection with the punishment for capital murder (Tr. 1494–1512).

The prosecutor then changed tactics and indicated that he intended to argue that the three non-violent felonies were to be used to negate the mitigating circumstance of no significant prior criminal history by showing that Hill had a substantial criminal record.[7] In open court, the following exchange took place:

[Prosecutor]: Now it is applicable, Your Honor, or relevant that the State would say that the other offenses that have been introduced are now for the purpose of that tending to demonstrate that there is a substantial prior criminal record under the mitigating circumstances section.

The Court: I presume you are offering that?

[Prosecutor]: Yes, Your Honor.

The Court: All right, sir.

[Defense Counsel]: Your Honor, I would point out to the Court that that has not been brought into the issue of mitigation at all; that that is simply an indication of the aggravation and that the jury should be instructed to consider it only as aggravation and not at all as mitigation portion, whatsoever.

The Court: The jury will be instructed on the items of mitigation. If that is there, they will consider it if they so desire. If it is not a proper item of mitigation, then the State, excuse me, then the jury shall not consider it. It is up to the jury it is on the verdict form of the instructions I give them. I will so advise ...

Tr. 1531–1532.

Despite the clear law that the non-violent felonies could not be considered as an aggravating circumstance, the prosecutor continued to press for their consideration by the jury in its deliberation.[8] In closing argu-

---

6. According to the statute in effect at the time of Hill's trial, Ark.Stat.Ann. § 41–1005 (Repl.1977), when an extended sentence for a habitual offender is sought, the jury, if it reaches a guilty verdict, hears evidence of a defendant's previous felony convictions. The defendant has the right to controvert the evidence. The jury then determines the sentence in accordance with the provisions of Ark.Stat.Ann. § 41–1001 (Repl.1977).

7. The Arkansas statute at the time provided that after the defendant was found guilty of capital murder, the jury then heard additional evidence relating to specific aggravating circumstances or any mitigating circumstance. Ark.Stat.Ann. § 41–1301 (Repl.1977). The statute provided as follows with regard to mitigating circumstances:

Mitigating circumstances shall include, but are not limited to the following:
(1) the capital murder was committed while the defendant was under extreme mental or emotional disturbance;
(2) the capital murder was committed while the defendant was acting under unusual pres-

sures or influences or under the domination of another person;
(3) the capital murder was committed while the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse;
(4) the youth of the defendant at the time of the commission of the capital murder;
(5) the capital murder was committed by another person and the defendant was an accomplice and his participation relatively minor;
(6) the defendant has no significant history of prior criminal activity.
Ark.Stat.Ann. § 41–1304 (Repl.1977) (now codified as Ark.Code Ann. § 5–4–605).

8. The aggravating circumstances are limited to:
(1) the capital murder was committed by a person imprisoned as a result of a felony conviction;
(2) the capital murder was committed by a person unlawfully at liberty after being sentenced to imprisonment as a result of a felony conviction;
(3) the person previously committed another felo-

ment during the penalty phase, the prosecutor stated:

> On Form 2,[9]
>
> ... as to mitigating circumstances ... that is for your good judgment. I cannot find any. In fact the State would say to you that under 6, where it says Darrel Wayne Hill, has no significant, no significant history of prior criminal activities, I that if there was a sign, that said substantial significant history or prior criminal activities, you could check that. Here it says that he has no significant history and we show you five (5).

Tr. 1550.

The Arkansas Supreme Court rejected Hill's argument that the trial court erred in allowing the state to prove, during the penalty phase, three prior convictions that did not involve threat or violence. The court held that two separate hearings on sentencing when capital and non-capital offense are tried together is not warranted. It found that the jury was properly instructed regarding the use of the prior convictions. *Hill*, 275 Ark. at 86–88, 628 S.W.2d 284.

■ The Court agrees that the denial of a severance *per se* did not deprive Hill of a fair sentencing hearing. The Court, however, cannot agree that the prosecutor's use of three prior non-violent felonies to rebut a non-existent mitigating circumstance does not constitute constitutional error.

The Arkansas Supreme Court in *Ford v. State*, 276 Ark. 98, 104, 633 S.W.2d 3 (1982), *cert. denied*, 459 U.S. 1022, 103 S.Ct. 389, 74 L.Ed.2d 519 (1982) held that the trial court erred in allowing evidence during the sentencing phase of prior crimes that did not involve the use of threat of violence or create substantial risk of death or serious physical injury to another person as an aggravating circumstance. The use of such felonies was also not proper for the purpose of anticipating a showing of lack of convictions as a mitigating circumstance. The court went on, however, to hold that the improper admission of the felonies was not prejudicial because the jury did not find that the defendant had an aggravating circumstance of having a prior felony involving the use of or threat of violence to another person or involving the creation of substantial risk of death or serious physical injury to another person. That is, there is some evidence that the jury did not even consider the prior convictions.

Justice Hickman, in a strong dissent in *Ford*, contended that the use of the inadmissible prior convictions was prejudicial error. Because of the lack in the record of any evidence that the defendant had no significant history of prior criminal history, Justice Hickman noted that the trial judge should not have submitted the mitigating circumstance. He admonished the state's use of such evidence.

> 'In short, proof of other crimes is never admitted when its only relevancy is to show that the prisoner is a man of bad character, addicted to crime.'

That is exactly what the State was able to do in this case.

> Ford should pay for the crime he committed, but our system cannot allow him to pay a price that is not fairly set by an impartial jury considering only relevant evidence in an atmosphere devoid of passion and prejudice.

276 Ark. at 115, 633 S.W.2d 3 (citation omitted).

The use of the non-violent felonies is even more prejudicial in this case than in *Ford*. Unlike *Ford*, the record here does not establish that the jury did not consider the three non-violent felonies. Here, the jury specifi-

---

ny any element of which was the use or threat of violence to another person or creating a substantial risk of death or serious physical injury to another person; (4) the person in the commission of the capital murder knowingly created a great risk of death to a person other than the victim; (5) the capital murder was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody; (6) the capital murder was committed for pecuniary gain; or (7) the capital murder was committed for the purpose of disrupting or hindering the lawful exercise of any government or political function. Ark.Stat.Ann. § 41–1303 (Repl.1977) (now codified as amended Ark.Code Ann. § 5–4–604).

9. The prosecutor refers to Form 2 which deals with mitigating circumstances (Tr. 1538–1539).

cally found the aggravating circumstance of a prior felony.

■ "Criteria set forth in the statute serve no purpose if prosecutors are free to ignore them." *Ford v. Arkansas*, 459 U.S. 1022, 1023, 103 S.Ct. 389, 390, 74 L.Ed.2d 519 (1982) (Marshall, J., dissenting). Here, the prosecutor attempted to get in through the back door what was clearly prohibited by the statute. Aggravating circumstances are limited to those set forth in the statute. To argue that the additional felonies were to be used to rebut the lack of prior criminal history was disingenuous when Hill had not offered any evidence in mitigation concerning the lack of a significant prior criminal history.

The Arkansas Supreme Court in *Miller v. State*, 269 Ark. 341, 354, 605 S.W.2d 430 (1980), *cert. denied*, 450 U.S. 1035, 101 S.Ct. 1750, 68 L.Ed.2d 232 (1981) recognized the problem and criticized the trial judges' practice of submitting to the jury in capital murder cases all seven of the statutory aggravating circumstances and all six of the enumerated mitigating circumstances.

We think it a better practice, and less confusing to the jury, for the circuit judge to omit from submission any aggravating or mitigating circumstances that are completely unsupported by any evidence, and we take this opportunity to direct the circuit judges of Arkansas to hereafter allow this alternate procedure. If there is any evidence of the aggravating or mitigating circumstances, however slight, the matter should be submitted to the jury.

269 Ark. at 354, 605 S.W.2d 430.

The Court cannot conclude that the prosecutor's use of the three non-violent felonies

was not prejudicial or harmless. *See Ford*, 459 U.S. at 1024, 103 S.Ct. at 390 ("There is certainly no basis for concluding beyond a reasonable doubt that the jury would have sentenced petitioner to death had it not been informed of his prior convictions.")

Nor is there any basis for finding that the error was harmless or that it did not have a substantial and injurious effect or influence [10] on the jury's decision because the jury found only aggravating circumstances but not mitigating ones. The jury must find not only that the aggravating circumstances outweigh the mitigating ones but that the former "justify a sentence of death beyond a reasonable doubt." Ark.Stat.Ann. § 41–1302(1)(c) (Repl.1977) (codified as Ark.Code Ann. § 5–4–603).[11] *See Williams v. State*, 274 Ark. 9, 12, 621 S.W.2d 686 (1981), *cert. denied*, 459 U.S. 1042, 103 S.Ct. 460, 74 L.Ed.2d 611 (1982) (court would not speculate as to what jury would do in death case if jury had found only two aggravating circumstances instead of three).

The prejudicial effect of the introduction of the felonies into the jury's deliberation during the penalty phase cannot be underestimated. As the Arkansas Supreme Court noted in *Whitmore v. State*, 296 Ark. 308, 316, 756 S.W.2d 890 (1988), the statute outlining the specific aggravating circumstances

is concerned with disclosing whether the defendant's history establishes such a propensity for violence that it will reoccur. Once the jury knows about a defendant's past propensity for violence, it can weigh that against any mitigating circumstances. In striking this balance the jury deter-

---

10. The Supreme Court recently held that on a habeas review of a state conviction the appropriate standard for determining whether constitutional error of a trial type was harmless is whether the error had substantial and injurious effect or influence in determining the verdict, rather than the *Chapman v. California* standard of harmless beyond a reasonable doubt. *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

11. Ark.Stat.Ann. § 41–1302 (Repl.1977) provided:

(1) The jury shall impose a sentence of death if it unanimously returns written findings that:

(a) aggravating circumstances exist beyond a reasonable doubt; and

(b) aggravating circumstances outweigh [outweigh] beyond a reasonable doubt all mitigating circumstances found to exist; and

(c) aggravating circumstances justify a sentence of death beyond a reasonable doubt.

The statute was amended in 1985 to provide that the Arkansas Supreme Court perform a harmless error review of a defendant's death sentence if on appeal the court finds that the jury erred in finding the existence of any aggravating circumstance and if the jury found no mitigating circumstance. Ark.Code Ann. § 5–4–603(d).

mines if the defendant has such a marked propensity for violence that it would likely manifest itself again in the future. If the jury determines beyond a reasonable doubt that the defendant will strike again, it may sentence him to death.

■ Here, the jury was provided additional evidence of Hill's criminal history which it could have factored in its weighing process. While the use of the three non-violent felonies alone constituted error, the inclusion for sentencing of the underlying felonies compounded the error. There can be no doubt that the submission of six felonies to the jury for sentencing created an inflammatory or impassioned atmosphere. The six felonies coupled with the introduction of the five prior felonies may have so inflamed or prejudiced the jury that it was left with the inevitable conclusion that Hill "will strike again."

Indeed, the record reflects that the jury did not entirely understand the instructions regarding sentencing and had to be returned to the jury room to fill out the jury forms. The court was informed that the jury had reached a verdict. The following exchange took place:

> The Court: Sheriff, would you get those verdict forms, Mr. Gaston handed me the instructions please. Mr. Fryar, the Foreman is now handing the verdict forms to the Sheriff. Thank you very much. Mr. Fryar, the verdict that you have handed me—is this the verdict of the jury?
>
> Foreman: Yes sir.
>
> The Court: You have reached a verdict?
>
> Foreman: Yes sir.
>
> The Court: Is this verdict or these verdicts that you have rendered, are they unanimous?
>
> Foreman: Yes sir.
>
> The Court: Thank you very much. Form 1 is signed by James R. Fryar, Foreman. Form 2, signed by James R. Fryar, Foreman ... if you will permit me and excuse me just a minute ... Verdict Form for Kidnapping of E.L. Ward.
>
> "We, the Jury, find that Darrel Wayne Hill has been convicted or found guilty of four (4) or more previous felonies and fix his sentence at: ...

> Gentlemen, this is an incomplete verdict form. All the verdict forms on, on the felonies other than capital felony murder are incomplete. The blanks to fill in the term of years has been left blank. Mr., You may sit down. Thank you very much. Mr. Fryar, did the jury in the kidnapping of E.L. Ward intend to return a verdict?
>
> Mr. Fryar: (Foreman): Well, we must have misunderstood you. We thought we did, had.
>
> . . . .
>
> The Court: Okay, for the record, let me exhibit and tell you what has happened. Would that be alright?
>
> [Prosecutor]: I believe they need to retire.
>
> [Defense Counsel]: I believe they should retire.
>
> The Court: Okay, what has happened. Ladies and Gentlemen and perhaps I, I hope you haven't misunderstood. On the verdict forms on the kidnapping, aggravated robbery and attempted capital murder. The three (3) spaces, A, B, and C call for certain verdict to be filled in by you in those blanks that are there. The figures that I read to you underneath those blanks in parenthesis are for your limits, for you to decide. So if you have decided, what you need to do is retire and take these forms and fill in within the limits specified on them what you so desire and at this time I will deliver all of the verdict forms back to the jury and ask that you further retire and complete them. Is there any specific questions with respect to that? You understand what I am saying, Mr. Fryar?
>
> Mr. Fryar: Yes sir, we do now. We do now.

Tr. 1558–1560.

In conclusion the Court finds that the prosecutor's argument along with the submission of the underlying felonies to the jury for sentencing constituted constitutional error. The error had a substantial and injurious effect or influence in the jury's determination that Hill should receive the death penalty.

The Court finds that Hill is entitled to relief with regard to the punishment stage on these grounds. As the Supreme Court in *Mills v. Maryland,* 486 U.S. 367, 383–84, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384 (1988) stated:

> The decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. The possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing.

■ V. Hill asserts that the trial court unconstitutionally commented on the evidence when it instructed the jury during the penalty phase that it could only consider the two robbery convictions as aggravating circumstances. He contends that the court's instruction amounted to instructing the jury that it was to accept the two robbery convictions as an aggravating circumstance.

As noted above the use of the non-violent felonies to negate a mitigating circumstance was prejudicial. It is also clear that confusion surrounded the penalty phase based on the above quoted portion from the transcript.

The Court, however, cannot find that the trial court's instruction was erroneous or that the trial court unconstitutionally commented on the evidence. The record shows that the jury was instructed that it "may" consider the robbery convictions as aggravating circumstances. The Court finds that this ground is without merit.

■ VI. Hill contends that his sentence was rendered in violation of the Fifth, Eighth, and Fourteenth Amendments because the jury arbitrarily and capriciously failed to consider relevant mitigating evidence demonstrating that Hill was suffering from extreme mental and emotional disturbance and also diminished capacity due to mental disease and drug and alcohol abuse.

Respondent argues that this claimed barred by procedural default.

Even assuming that Hill had presented this claim to the state court and that it is therefore properly before this Court, the Court finds that it is without merit.[12] The evidence concerning Hill's chronic alcohol and drug abuse was presented during the guilt phase to support Hill's defense of diminished capacity or insanity. As will be discussed, defense counsel presented virtually no evidence of mitigation during the penalty phase and made only slight reference to the earlier testimony concerning drug and alcohol dependence during his argument at the penalty stage (Tr. 1553).

That the jury did not find mitigating circumstances is not surprising given counsel's failure to effectively offer such evidence. *See discussion infra.* The Court, however, cannot find that the jury erred or acted arbitrarily and capriciously in failing to consider any mitigating evidence. Hill is not entitled to relief on this claim.

■ VII. Hill argues that one of the aggravating circumstances found by the jury, that the murder was committed for the purpose of avoiding a lawful arrest or effecting an escape from custody, has been given such a vague and overly broad interpretation as to lead to arbitrary and capricious sentencing in violation of *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

In *Godfrey,* the Supreme Court held unconstitutionally vague the aggravating circumstance that the offense committed was "outrageously or wantonly vile, horrible or inhuman." A state "must channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" 446 U.S. at 428, 100 S.Ct. at 1765 (citations omitted). An "aggravating circumstance must be described in 'terms that are commonly understood, interpreted and applied.'" *Newlon v. Armontrout,* 885 F.2d 1328, 1334 (8th Cir.1989), *cert. denied,* 497

---

**12.** *See Kenley v. Armontrout,* 937 F.2d 1298, 1301 (8th Cir.1991) (court may bypass procedural bar and address the merits of the issue where relief is denied and the merits are plainer and simpler than the procedural defenses).

U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990) (citation omitted).

■ The Court is not persuaded that the aggravating circumstance of "the murder was committed for the purpose of avoiding a lawful arrest or effecting an escape from custody" is vague, overly broad or capable of being misunderstood. Furthermore, as the Arkansas Supreme Court held, the facts of the case supported the finding of this particular aggravating circumstance. *Hill v. State,* 278 Ark. at 204, 644 S.W.2d 282 ("Under the facts of the case the jury was justified in finding that petitioner shot Teague and Ward to increase his chances of avoiding arrest after he had robbed Ward's service station.").

Hill is not entitled to relief on this ground.

VIII. Hill's eighth ground, challenging the constitutionality of the death qualified jury, is without merit in light of the Supreme Court's decision in *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), rejecting the argument raised by Hill.

■ IX. Hill argues that the Arkansas death penalty statute is unconstitutional because it penalizes the exercise of one's Sixth Amendment right to trial by jury in that the death penalty can only be imposed by a jury and, therefore, one who exercises his right to trial by jury subjects himself to a possible sentence of death whereas one who pleads guilty cannot be sentenced to death.

■ This argument has been rejected by the Arkansas Supreme Court. *Ruiz & Denton v. State,* 275 Ark. 410, 630 S.W.2d 44 (1982), *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982).[13] In denying Hill's Rule 37 petition, the court found that the procedures governing jury trial in capital murder cases do not place an impermissible burden on the exercise of the right to trial by jury. The trial judge is not required to impose the death penalty in every case in which the jury prescribes it. *Hill v. State,* 278 Ark. at 197, 644 S.W.2d 282. *See also Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978) (upholding constitutionality of New Jersey's sentencing

scheme for first-degree murder). Hill is not entitled to relief on this ground.

X. and XI. Grounds X and XI are attacks on the constitutionality of the death penalty statute. In Ground X Hill asserts that the Arkansas death penalty statute, as applied since its enactment, has resulted in the arbitrary and capricious imposition of the death penalty upon only a few individuals. As the State notes, Hill's argument is so conclusory as to be impossible to answer. Indeed, Hill has not even briefed the argument in his post-hearing brief.

Hill has provided no support for his broad assertion that the Arkansas scheme results in the arbitrary and capricious imposition of the death penalty. The Court finds that Ground X is without merit.

■ In Ground XI Hill argues that his death sentence is cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments and deprives him of due process of law and equal protection of the laws. The State asserts that Hill has procedurally defaulted with regard to this issue.

Even assuming that the claim is not barred because of procedural default, the Court must conclude that it is without merit. The Arkansas death penalty statute has been found to be constitutional. *See Collins v. State,* 261 Ark. 195, 548 S.W.2d 106 (1977), *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977).

■ XII. Hill states that the imposition of the death penalty violated his rights under the Eighth and Fourteenth Amendments because the appellate court was not required to, and did not perform a comparative sentence review. According to Hill, the death sentence in this case is disproportionately severe in light of the circumstances of the case.

The United States Supreme Court has held that the Eighth Amendment does not require a comparative proportionality review of a death sentence in every case. *Pulley v.*

---

13. *See also Pickens v. Lockhart,* 542 F.Supp. 585, 613 (E.D.Ark.1982), *remanded,* 714 F.2d 1455 (8th Cir.1983), where the court rejected the identical argument in another death penalty habeas case.

*Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Although not constitutionally mandated, the Arkansas Supreme Court did conduct a comparative sentence review in this case. In response to the issue raised in Hill's Rule 37 petition, the Arkansas Supreme Court stated:

> On appeal from a sentence of death, it is the practice of this Court to compare the sentence with sentences in other cases in which the death penalty has been imposed. *Collins, supra.* Petitioner argues that in his case no comparative review was required or afforded by this Court, apparently because the opinion does not specifically state that it was.

> While there is no absolute requirement under federal law that this Court make a comparative review of a death sentence, we have consistently afforded such review since *Collins,* although our opinions do not so state in all cases.

278 Ark. at 205, 644 S.W.2d 282.

The Court finds that Hill is not entitled to relief on this ground.

■ XIII. Hill argues that he was denied effective assistance of counsel at trial. In his amended petition, he outlines the areas in which counsel's performance was deficient.[14]

(1) Trial counsel failed to adequately prepare for trial or conduct any meaningful investigation of the case because:

(a) they did not adequately investigate and determine the relevant facts of the case;

(b) they did not interview or contact relevant witnesses for the state;

(c) they did not adequately determine and develop petitioner's version of the facts;

(d) they did not determine and investigate possible defense witnesses to develop a defense to the charge;

(e) they did not determine and investigate witnesses who could have been called at the sentencing phase of the trial to offer evidence in mitigation.

(2) Trial counsel had virtually no experience in and were not adequately versed in the law pertaining to capital cases nor the procedures by which such cases are tried. Such lack of knowledge and experience resulted in counsel's failure to raise issues crucial to petitioner's case and in their failure to protect petitioner from the improper application of the Arkansas death penalty statute.

(3) Counsel's inadequate preparation for a capital case resulted in their failure to raise by pretrial motions issues regarding the constitutionality of the Arkansas death penalty statute, on its face and in its application.

(4) Counsel failed to properly investigate and present qualified witnesses in support of petitioner's motion for change of venue.

(5) Counsel was further ineffective in not renewing the motion for severance of offenses and in not conducting proper research to present the obvious and proper reason for the granting of the motion for severance.

(6) Counsel failed to object to the State's amendment of the information to add the habitual offender charges to the non-capital felonies which resulted in the jury erroneously being presented with evi-

14. In his post-hearing brief, Hill limits his ineffective assistance claim to six points, as follows:
1. Counsel was ineffective in not filing any motions on Hill's behalf concerning the constitutionality of the Arkansas death penalty statute on its face or as applied to Hill.
2. Counsel was ineffective in failing to obtain proper affidavits or presenting necessary evidence in support of the motion for change of venue.
3. Counsel was ineffective in failing to adequately move and argue for a severance of offenses.
4. Counsel was ineffective in the handling of the voir dire.
5. Counsel was ineffective in failing to adequately investigate or develop a theory of defense, and in failing to obtain the evidence to establish a defense of diminished capacity or insanity defense.
6. Counsel was ineffective at the penalty phase because they did not effectively investigate and present evidence of Hill's history of mental illness, drug and alcohol abuse as a mitigating circumstance.

dence of non-statutory aggravating circumstances at the penalty phase of the trial.

(7) Counsel was ineffective in failing to object to erroneous jury instructions and verdict forms submitted to the jury at both the guilt and sentencing phases of trial which erroneously allowed the jury to consider the lesser offenses of kidnapping and robbery as independent, substantive offenses and to impose punishment on those offenses contrary to Arkansas law.

(8) Counsel failed to request an instruction that according to Arkansas law, the jury could return a verdict of life imprisonment without parole despite making all the findings required for a sentence of death.

(9) Counsel failed to file a motion to have the jury's verdict set aside due to its improper refusal to consider evidence offered in mitigation.

(10) Counsel failed to investigate, research or prepare for the penalty phase of this case.[15]

In order to prevail on a claim of ineffective assistance of counsel, Hill must establish both that his trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). In a death penalty case, the Court must determine "whether, but for counsel's deficient performance, there is a reasonable probability the jury would have concluded the balance of the aggravating and mitigating circumstances did not warrant death." *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991).

Hill was charged on February 7, 1980, with the death of Teague and the shooting of E.L. Ward. Bill McKimm and John Peterson were appointed to represent Hill on February 13, 1980. In late March, Peterson was relieved as counsel and Bob Keeter was appointed as co-counsel.

McKimm was of the opinion that the state's case was strong due to the existence of Ward, an eyewitness, and concluded that an insanity defense was about "the only way to go" (H.T. 22, 27).

On February 22, 1980, counsel filed a petition raising the insanity defense and requesting a state hospital evaluation (Tr. 5). The trial court entered a commitment order on March 12, 1980 (Tr. 6).

By letter dated March 8, 1980, Hill provided defense counsel with information concerning his hospitalizations. (H.T. Petitioner's Exhibit 6). Counsel advised Dr. Oglesby of the Arkansas State Hospital where Hill was being evaluated of the prior hospitalizations, including the names of the treating physicians, and informed them where Hill's records could be obtained. Counsel also advised Dr. Oglesby of Hill's previous diagnosis of acute paranoid schizophrenia and that he had failed to take his anti-psychotic medication prior to the crime. (H.T. Petitioner's Exhibit 7).

On April 17, 1980, counsel filed a motion requesting production of the Arkansas State Hospital records. On April 25, 1980, the trial court entered an order for production of the complete record of examination from the Arkansas State Hospital (Tr. 20).

McKimm testified at the evidentiary hearing that he received the Arkansas State Hospital records sometime after May 1, 1980

---

**15.** The state argues that Hill has procedurally defaulted on all the claims with the exception of 1(e). The Court does not agree. The Arkansas Supreme Court addressed the issue of ineffective assistance of counsel in Hill's Rule 37 petition. 278 Ark. 194, 203, 205, 644 S.W.2d 282 (1983).

For a criticism of reliance on procedural technicalities to deny a petitioner review of the merits of his or her constitutional claim, *see* Lay, at 1063 ("It is difficult for many of us to believe that in today's society an individual may be executed by reason of technical error by his or her lawyer in order to exalt the goal of state finality above the requirements of fundamental fairness.")

Indeed, the Arkansas Supreme Court decades ago in *Swagger v. State*, 227 Ark. 45, 53, 296 S.W.2d 204 (1956) recognized the value and the role that fundamental fairness should play in criminal proceedings by noting that where a "judgment is void because of the want of due process of law, it has no force and effect, and can be vacated at any time."

(H.T. 31, 32). The records from Arkansas State Hospital did not include any records of Hill's previous hospitalizations in Oklahoma.

At the May 22, 1980, omnibus hearing, counsel requested that the competency hearing be continued until they had received the medical records from Oklahoma (Tr. 128). The trial court indicated it would allow the defense to present at a later date any additional medical information they might obtain from the institutions (Tr. 128, 129).

The trial court determined that Hill was competent to proceed to trial (Tr. 140). After the court announced its ruling, defense counsel renewed a request for the appointment of an independent psychiatrist to examine Hill prior to trial. The court denied the request and opined that it did not have sufficient grounds to grant it at the time (Tr. 143). At defense counsel's request, the court entered an order requiring the Arkansas State Hospital to turn over whatever Oklahoma records it had (Tr. 142–143).

At the omnibus hearing, about two weeks before the scheduled June 9th trial, defense counsel indicated that they had not received psychiatric reports from Oklahoma and were not in a position to inform the court if insanity would be raised as a defense (Tr. 377). The trial, however, was continued when one of defense counsel was called to active duty by the United States Army.

On June 10, 1980, the hospital in Oklahoma sent to defense counsel some of Hill's records (H.T. Petitioner's Exhibits 9 and 10). As was later determined, these records were incomplete. Defense counsel did not learn of the additional records until shortly before the habeas hearing (H.T. 45).

On June 27, 1980, counsel filed a motion for appointment of an independent expert. Dr. Douglas Stevens, a psychologist, was appointed. He met with Hill, evaluated him and ultimately testified at trial.

Hill argues that his counsel failed to adequately investigate and present the insanity defense. He points to counsel's failure to contact Hill's physicians and hospital staff and to obtain all the medical records. He notes that counsel failed to contact the staff at the Tulsa Unit of Eastern State Hospital

concerning Hill's outpatient treatment at the facility from the time of his discharge in August, 1979, through January 16, 1980, when Hill failed to make his appointment to receive his anti-psychotic medication, just three weeks before the crime occurred.

Thomas Carpenter, an attorney with criminal experience, testified as an expert in capital case litigation. He stated that when insanity is a defense, counsel must begin preparation early and that reasonably competent counsel would have obtained all of Hill's records as soon as possible to effectively develop and present this defense (H.T. 175).

"Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories, and development of evidence to support those theories." *Henderson v. Sargent*, 926 F.2d 706, 711 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 915, 116 L.Ed.2d 815 (1992).

Investigation and development of the insanity defense was hardly more than perfunctory. Counsel should have begun their efforts to obtain medical records sooner, and should have talked to potential witnesses. An earlier request for the appointment of an independent expert might have revealed the need for additional evaluation and documentation.

Counsel did not contact all Hill's treating physicians, who could testify to the effects of Hill's failure to take his anti-psychotic medication. No effort was made to introduce the medical records which would have established that Hill had a long history of mental illness. Without the supporting medical records from Oklahoma, Dr. Stevens' diagnosis was made in a vacuum without additional evidence to validate it.

Furthermore, additional investigation would have better prepared defense counsel to cross examine Dr. Rosendale. The records would have called into question Dr. Rosendale's diagnosis (H.T. 234).

■ Defense counsel's argument that the records were prejudicial because they contained prior conviction evidence or bad act information cannot justify defense counsel's

failure to introduce them. As Thomas Carpenter testified at the evidentiary hearing, the bad act information could have been redacted or defense counsel could have filed a motion in limine to keep out the information. As Carpenter stated, "It's a perfect basis for a motion in limine to the judge and request that the record be redacted and to present it that way." (H.T. 186)

■ The resulting prejudice from the failure of counsel to adequately investigate and present a defense cannot be underestimated. The jury was presented only minimal, incomplete information. They did not have the documentation establishing a long history of drug and alcohol abuse, mental illness, including auditory hallucinations and paranoid delusions for ten years. The jury was not told of the May, 1979, legal finding of insanity where Hill was found incompetent to proceed to trial on charges pending in Oklahoma. Hill was treated continuously from May, 1979, until he was discharged with a guarded prognosis on August 8, 1979, to stand trial in Oklahoma. He still required outpatient treatment and anti-psychotic medication to avoid becoming psychotic again. The jury was not informed of the adverse consequences of Hill's failure to take antipsychotic medication right before the crime. Dr. James Moneypenny, an expert in clinical psychology who testified at the evidentiary hearing, stated that the records were extremely significant and established a strong likelihood that Hill was actively psychotic at the time of the offense (H.T. 227, 228, 232–237, 247, 248). Dr. Moneypenny further stated that the Oklahoma mental health records provide a strong case for the likelihood that Hill's mental state at the time of the offense was impaired to such a degree that he could not distinguish between right and wrong (H.T. 248).

The Court finds that defense counsel failed to adequately investigate and present an insanity defense. The Court is further persuaded that but for counsel's errors the result would have been different.

With regard to the other claims of ineffective assistance of counsel at the guilt/innocence phase, the Court does not find that counsel's performance was deficient. Although they did not file certain pretrial motions, defense counsel orally challenged the constitutionality of the death penalty statute. Furthermore, Hill has failed to demonstrate any prejudice by counsel's failure to file such pretrial motions.

With regard to the failure to obtain additional affidavits in support of a motion for change of venue, Hill has also failed to demonstrate prejudice. At the close of the voir dire, counsel moved for a change of venue and asked that the voir dire proceedings be incorporated in the motion to establish that Hill could not receive a fair trial.

The Court does not find counsel's performance deficient. As discussed above, Hill was not prejudiced by the denial of the motion for change of the venue. *See Swindler v. Lockhart,* 885 F.2d 1342, 1351–52 (8th Cir.1989), *cert. denied,* 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990) (defendant did not suffer prejudice from counsel's failure to follow the letter of the statute when moving for a change of venue).

Furthermore, counsel's performance during voir dire was not deficient. The Court finds that counsel adequately questioned prospective jurors and made appropriate objections. Even Hill's expert at the habeas hearing stated that counsel had done an excellent job during voir dire (H.T. 190).

Hill's assertions concerning counsel's failure to move for severance, failure to object to the State's amendment of the information, failing to object to jury instructions, and failure to move to set aside the verdict are all without merit. Hill cannot establish that he was prejudiced by counsel's performance.

Hill also complains that counsel failed to request a jury instruction that the jury could return a verdict of life imprisonment without parole despite making all the findings required for a sentence of death. This contention is without merit. The jury instruction provided, AMCI 1509, provides that the jury must find that a sentence of death is justified.

■ Thus, with respect to the guilt/innocence phase, the Court finds that counsel did not render Hill effective assistance with re-

spect to investigating and presenting an insanity defense. The Court is also persuaded that counsel did not render Hill effective assistance during the penalty phase.

The only evidence defense counsel offered in mitigation was the testimony of Reverend Nixon, a Methodist minister. He had met with Hill two times while Hill was awaiting trial.

Even defense counsel, during the habeas hearing, admitted that they "did not establish a great deal through" Nixon (H.T. 96). In fact, they did not establish anything through Nixon, who was virtually a stranger to Hill.

■ The medical records available to defense counsel at the time establish that Hill had an extensive history of mental illness, drug and alcohol abuse. Counsel did not offer these records into evidence at the time of trial. Furthermore, as noted above, counsel did not obtain additional medical records which would have provided further background information on Hill, particularly that concerning Hill's troubled childhood. Nor did counsel have Dr. Stevens testify during mitigation regarding Hill's background. "Evidence of a difficult family history and of emotional disturbance" is generally relevant to mitigation. *Eddings v. Oklahoma,* 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Here, defense counsel completely abdicated their responsibility in presenting to the jury this extremely relevant, and important information.

■ Defense counsel also failed to adequately interview witnesses or discover mitigating evidence. *See Kenley v. Armontrout,* 937 F.2d 1298, 1304 (8th Cir.1991) ("Failing to interview witnesses or discover mitigating evidence relates to trial preparation and not trial strategy."). Defense counsel testified at the hearing that Hill did not want his mother to testify. Counsel also stated that Hill's brother and sister-in-law did not want to testify at trial (H.T. 144). There is no indication, however, that counsel attempted to discover other witnesses who could testify in mitigation, such as other family members or mental health personnel who had known Hill.

Counsel testified that they did not want to put in the medical records because of what was in their opinion damaging information concerning Hill's criminal history and prior bad acts. In rejecting a similar argument, the court in *Kenley v. Armontrout,* 937 F.2d at 1309 stated: "[I]n the context of what the jury had already heard at trial about [defendant's] crazed and violent actions on the night of the crimes, we are doubtful that much of the additional aggravating information would have had any significant incremental aggravating effect on the jury."

The Court cannot speculate that the failure to provide the medical records in support of Hill's history of drug and alcohol abuse would do more harm than good or that Hill was not prejudiced by the omission. The jury would have considered it and might have been influenced by it. *See Pickens v. Lockhart,* 714 F.2d 1455, 1467 (8th Cir.1983).

In sum, the Court finds that Hill did not receive effective assistance of counsel during the penalty phase. Given Hill's long history of mental illness, drug and alcohol abuse and troubled childhood, it was unreasonable to not offer the medical records during the penalty stage. It was also not reasonable for counsel not to thoroughly investigate possible mitigating evidence.

The prejudice is clear. The jury was deprived of hearing important, mitigating evidence which could have been presented in a sympathetic light. The jury's " 'possession of the fullest information possible concerning the defendant's life and characteristics' is '[h]ighly relevant—*if not essential*—[to the] selection of the appropriate sentence ...' " *Lockett v. Ohio,* 438 U.S. 586, 603, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (citation omitted). The Court finds that there is a reasonable probability that the outcome of the sentencing proceeding would have been different but for counsel's ineffectiveness.

## Conclusion

The Court finds that counsel was ineffective at both the guilt and penalty stages. The Court further finds that constitutional error occurred during the penalty phase when the prosecutor used three non-violent felonies as a non-statutory aggravating circumstance.

The petition for writ of habeas corpus is granted. The State is required to vacate Hill's convictions and sentences and either retry him within 120 days or the writ of habeas corpus shall be issued and Hill will be released.

IT IS SO ORDERED.